# CHARLESTON.

Patrick M. Hoge v. Antoinette Blair *et al.*

Submitted January 18, 1921.   Decided January 25, 1921.

1. Executors and Administrators—*Personal Representatives Held Necessary Parties in Action on Liability Assumed by Heirs.*

   The facts alleged in the bill and otherwise appearing in the record in this cause do not show assumption by defend-

ants as heirs of the liability of their ancestors for the services sued for by, plaintiff so as to excuse · the absence as defendants of the personal representatives of such decedents or warrant a personal decree against defendants therefor. (p. 520).

2. DESCENT AND DISTRIBUTION—*Wills—When Heirs of Devisees Personally Liable for Ancestor's Debt Under Statute Stated.*

Section 6 of chapter 86 of the Code does not render personally liable heirs or devisees for a debt of their ancestor in respect to real estate descended or devised to them, except when they have sold the land and received the proceeds, and then only for the value of the land with interest as provided by section 5 of said chapter. (p. 520).

3. APPEAL AND ERROR—*Parties—Court Discovering Absence of Necessary Parties Should Bring Them in; Judgment in Their Absence Reversed.*

When in the progress of a suit or other proceeding the court discovers the absence. of necessary parties, it should stop, and before proceeding to judgment or decree require the proper parties to be brought in as plaintiffs or defendants; and its failure to do so will constitute reversible error on review of the judgment or decree below by this court. (p. 521).

Appeal from Circuit Court, Marion County.

Suit by Patrick M. Hoge against Antoinette Blair and others. Decree for plaintiff, and defendants appeal.

*Reversed and remanded.*

*W. S. Meredith,* for Appellants.

MILLER, JUDGE:

Plaintiff, an attorney at law residing in Marion County. in March 1914, instituted in the circuit court of that county his suit in equity upon foreign attachment against Antoinette Blair (nee Loller) Cecelia Bryan, widow of Weeden J. Bryan, and S. W. Loller, the father of Antoinette Blair and son-in-law of said Weeden J. Bryan and Cecelia Bryan, non-residents, residing in Pennsylvania, the object of which suit was to recover from defendants the sum of $10,000.00, alleged in his original and amended bills to be due and owing from them for legal services rendered them successively in this state covering the years from 1902 to 1913 inclusive, as shown in his bill of particulars filed, and to subject to sale the lands of the defendants attached, located in this state, to the payment thereof.

The demurrers of defendants to the amended bill were overruled, and they were ruled to answer, and upon the final hearing thereon, and on the issues joined, and the depositions and proofs taken and filed by the plaintiff in the cause, the court pronounced the decree of which defendants Antoinette Blair and S. W. Loller complain, adjudging that they pay to plaintiff the sum of $8,738.00, with interest from the date of the decree until paid, with the costs incurred by him, and that unless so paid within thirty days the lands attached should be sold by the commissioner thereby appointed to sell the same.

Numerous points of error are urged as calling for reversal of the decree, some of them overlapping others. The one which must be first considered, presented not only by the demurrers to the original and amended bills, but by the answers and exceptions to the depositions taken on behalf of the plaintiff, is that of want of necessary parties defendant, namely, the administrators of the estates of W. J. Bryan, Lizzie B. Loller, and Cecelia Bryan, deceased, the latter of whom died pending the suit. If this point be well conceived, we must suspend consideration of any other question, as the circuit court should have done, until the proper parties have been brought in and properly impleaded in the cause.

The allegations of the amended bill, taken in connection with the several exhibits, in so far as they are pertinent to the present inquiry relating to parties, are that plaintiff was first employed by Weeden J. Bryan to look after his estate and began and continued in that employment from January 1902 until his death in 1907, when he was immediately retained by his daughter Lizzie B. Loller in the same service, and that after her death which occurred in August 1911, the defendants retained him to look after their interests in the property left them by said Weeden J. Bryan, and that at their and each of their special instance and request he performed a large amount of service in looking after their interests.

It is further alleged that because of the financial standing of said W. J. Bryan plaintiff rendered him no bill for services during his life time, but that on December 3, 1910, he rendered to his daughter, the said Lizzie B. Loller, a bill for ser-

vices to that date, which he alleges was just and reasonable, and of which she made no complaint, but declined to pay the same, giving as her reason that her money was tied up in attachment proceedings, but at the same time insisting that plaintiff should continue his services and promising to settle with him at a later date, which plaintiff alleges he agreed to do, and that he thereafter rendered a large amount of services in that behalf until her death occurring in August 1911; that at that time there was due him from Cecelia Bryan and the estates of Weeden J. Bryan and Lizzie B. Loller the sum of $5,962.00, for his services aforesaid, and that the defendants Cecelia Bryan and Antoinette Blair after the death of Lizzie B. Loller agreed with plaintiff in writing signed by them to pay him for his services aforesaid as shown by letters passing between them filed as Exhibits Nos. 2 and 3 with the bill as amended. And it is further alleged that there was due plaintiff at the date of the suit for his services and expenses incurred in looking after the estate of said W. J. Bryan the sum of $10,000, as shown by his bill of particulars filed and made part of the bill.

In a preceding paragraph of the bill it is alleged that after the death of said Lizzie B. Loller, August 3, 1911, the three defendants Antoinette Blair (nee Loller), the widow Cecelia Bryan and S. W. Loller entered into an agreement in writing, by the terms of which Antoinette Blair became the owner in fee of the real estate in Marion County, subject to the life estates of said Cecelia Bryan and S. W. Loller, while the personal property of every kind and character, including monies, royalties and securities, passed to the three share and share alike.

While the bill does not so allege, the contract when looked to does contain a provision relating to monies and royalties, including monies in the hands of the Fairmont Coal Company, the oil and gas royalties, and all other monies and personal property wheresoever situated, and after payment thereout "of all fees, costs and expenses, and the indebtedness of the estates of said Lizzie B. Loller and W. J. Bryan, shall be equally divided into three parts, one of which parts shall go to and vest absolutely in the said Cecelia Bryan, * * another said equal part thereof shall go to and vest in the said S. W. Loller,

* * and the remaining third shall go to and vest in the said Marie Antoinette Loller (Blair)."

Another provision of the contract is that it was understood that the said S. W. Loller and Marie Antoinette Loller were to have management of the litigation in West Virginia and of the real estate, but were to consult with Mrs. Bryan concerning the same, and manage their joint interests for their joint benefit; that the parties thereto were in no sense to be considered partners, nor one have the power to create any liability upon the other without his or her consent.

It is not so alleged, nor do we think the contract rightly interpreted was intended, to take the estates of the decedents W. J. Bryan and Lizzie B. Loller out of the regular channel of administration, or that the parties thereto intended to personally assume and pay the old debts of these estates. They were contracting with reference to the balances that might remain after payment of such fees, costs, expenses and indebtedness as was stipulated.

Nor do we find in the correspondence, Exhibits Nos. 2 and 3 with the bill as amended, full support of the allegation that defendants agreed in writing with plaintiff to pay him for the services rendered by him to their ancestors W. J. Bryan and Lizzie B. Loller. In one of these letters, signed Antoinette Blair, dated February 19, 1913, addressed to plaintiff in reply to his letter of February 2, 1913, not produced, she says she and her grandmother have thought the matter over and believe they have come to a definite conclusion, and requested him to make out his bill in full to date for all work done in the past; that they had decided to have him continue as in the past to look after their affairs, for which he was requested to submit a proposition to work by the year, on a percentage, or by the piece. He replied to this letter February 21, 1913, saying that his bill amounted to $5,798.00; that he preferred to work by the year, and saying that theretofore he had charged at the rate of $500.00 per year unless he had extra work to do, but that from that time on as he would have to represent two instead of three, he would charge only $400.00 per year. in a letter dated February 3, 1913, from Mrs. Blair to plaintiff, the said: "Will you please sign two notes to send to us as

each of us will give our individual notes. I think that a better way." In a letter dated January 29, 1913, (probably intended for January 29, 1914), Mrs. Blair wrote plaintiff: "Your letter to hand. I will say if you can get that money we will pay two thirds of same, my Grandma and I. If it is not possible to get the money in a reasonable length of time we will give our notes" etc. The bill of particulars filed by plaintiff is made out against Weeden J. Bryan, Estate, debtor, Lizzie B. Loller, Estate, debtor, and S. W. Loller, Antoinette Blair, and Cecelia Bryan, debtor. None of these letters relied. on by plaintiff as showing promises on the part of defendants to pay him his account extending back into the year 1902 and up to the year 1913, are signed by Mrs. Bryan or S. W. Loller, and while it may be urged from one or two of them that Mrs. Blair and her grandmother (not her father) would each pay one-third of plaintiff's claim, there is no allegation that plaintiff accepted the proposition. And the only evidence on the subject is that plaintiff received and credited on his account two payments of $200.00 each during the year 1913, apparently on account of the services rendered Mrs. Blair and Mrs. Bryan for that year.

The answers denied assumption by defendants of the indebtedness of W. J. Bryan and Lizzie B. Loller, and in our opinion the allegations of the bill do not show such a novation of the debt of the ancestors as to excuse the absence of the administrators of their estates, nor as to justify the personal decrees against Marie Antoinette Blair and S. W. Loller.

In plaintiff's belated brief, presented after this case was submitted for decision on the brief of appellants, we observe that he rests his claim of right to an affirmance of the decree mainly on section 6 of chapter 86 of the Code. That section does say that, "An heir or devisee may be sued in equity by any creditor to whom a debt is due, for which the estate descended or devised is liable, or for which the said heir or devisee is liable in respect to such estate; and he shall not be liable to an action at law for any matter for which there may be any redress by such suit in equity." But as we decided in *Crawford's Adm'r* v. *Turner's Adm'r,* 58 W. Va. 600, that section, rendering the

heirs or devisees liable to a suit in equity, does not give right of personal decree against them "in respect to such estate," unless such heirs or devisees have sold and conveyed the real estate, by section 2 of chapter 86 made assets for the payment of decedent's debts, and then only for the value thereof with interest as provided by section 5 of said chapter. In no other way is an heir or devisee rendered liable by law for the debts of his ancestor. In the case at bar the bill does not allege liability under the statute; the sole basis alleged for a personal decree is the alleged contracts of the parties. Of course each is liable on any special contract independently of the statute, but the heirs are not personally liable unless the land has been sold, and if sold, then only for the value thereof. There is no claim that the lands attached in this case have been sold and the proceeds thereof appropriated by defendants, rendering them liable under the statute. On the contrary, the prime object of the suit and attachment was to sell the land to pay the plaintiff's claim. The bill does not specifically pray for a personal decree.

The question then remains, do the facts shown on the record excuse the failure of the plaintiffs to bring in and make defendants the administrators or executors, as the case may be, of W. J. Bryan, Lizzie B. Loller and Cecelia Bryan? It is alleged they were non-residents, but they may have personal estate for administration in this state. Their personal representatives have the right to defend their estates in any way. they can, and when appointed must do so. If a non-resident decedent leaves tangible personal estate in this state, it would have to be administered here, and section 4 of chapter 85 of the Code gives jurisdiction to hear and determine the right of administration of the estate of an intestate to the court that would have jurisdiction as to the probate of his will, if there was one, and this section disqualifies a non-resident unless the decedent was a non-resident at the time of his death and appointed by his will a non-resident executor. By section 22 of chapter 77 of the Code, relating to the place of probate of wills, the county court of the county in which a non-resident testator had property at the time of his death has jurisdiction to probate his will, wherefore also when he dies intestate, under

the provisions of section 4 of chapter 85, the same court would have jurisdiction to appoint an administrator of his personal estate located in such county. And what would be the rights and duties of an administrator when so appointed? Would they not be to defend in every way he could the estate of his decedent? We certainly think so. It would be his right and duty to show payment if possible. Of course the heir may defend his inheritance in the same way, by plea or otherwise, but he does not thereby supersede the personal representative nor excuse him from making defense also. As a general rule no estate of a decedent can be proceeded against without the presence of the personal representative, and when his absence appears, it is the duty of the court on its own motion, if not otherwise moved, to stop until the absent party is brought in. *Hitchcox* v. *Hitchcox,* 39 W. Va. 607; *Morgan* v. *Blatchley,* 33 W. Va. 155; *Snavely* v. *Pickle,* 29 Gratt. 27. And as held in the recent case of *Carder* v. *Johnson,* 84 W. Va. 708, 100 S. E. 502, if the lower court has decided against an estate in the absence of the personal representative, the decree will be reversed and the cause remanded with directions to have the personal representative made a party.

The bill here presents the issue of payment of the account sued for. In the case last cited it was held that the long lapse of time was not conclusive of the fact of payment, but that the presumption of payment raised thereby was a rebuttable one, and did not excuse the absence of the debtor's personal representative.

Because of the want of necessary parties, as indicated, we are of opinion to reverse the decree and remand the cause.

In what has been said respecting the documentary evidence exhibited with the bill, we must not be understood as indicating any opinion as to its weight or sufficiency farther than as holding that it is not sufficient to show assumption by defendants or either of them to personally pay the debts of their predecessors or ancestors liable for the whole debt or claim sued for. Plaintiff may be able when the case goes back, to strengthen his evidence on the character of the services rendered and cov-

ered by his bill of particulars, but we now indicate no opinion on the evidence presented.

The decree will be reversed and the cause remanded.

*Reversed and remanded.*