Willowbrook Mining Company, Petitioner *v.* Commonwealth of Pennsylvania, Department of Environmental Resources, Respondent.

Argued September 9, 1985, before Judges CRAIG and DOYLE, and Senior Judge BLATT, sitting as a panel of three.

*Stephen C. Braverman*, with him, *Charles E. Gutshall, Dilworth, Paxson, Kalish & Kauffman*, for petitioner.

*Alan S. Miller*, Assistant Counsel, for respondent.

OPINION BY JUDGE CRAIG, October 7, 1985:

Willowbrook Mining Company appeals a decision of the Pennsylvania Environmental Hearing Board, which granted summary judgment in favor of the Department of Environmental Resources and dismissed Willowbrook's appeal from DER's denial of a variance request. The issue for our resolution is whether the EHB properly determined that the application of the statutory prohibition against surface mining within three hundred feet of an occupied dwelling, contained in section 4.5 of the Act of May 31, 1945, P.L. 1198, added by section 8 of the Act of October 10, 1980, P.L. 835, 52 P.S. §1396.4e, did not result in an unconstitutional taking of Willowbrook's property.

The facts, which are not in dispute, indicate that Willowbrook acquired the right to 700 acres of coal

on March 14, 1970, and acquired the surface estate in 71 of those acres, including the area in dispute here, before the federal Surface Mining Control and Reclamation Act of 1977 took effect on August 3, 1977. Willowbrook has been conducting surface mining operations on the property pursuant to permits which DER issued in 1978.

In March of 1982, Willowbrook requested a variance from the statutory restriction against mining in a 300-foot buffer zone around an occupied dwelling without the homeowner's consent. DER denied that request on May 5, 1982, and in July, 1984, the EHB dismissed Willowbrook's appeal from that denial, granting summary judgment in favor of DER. The EHB declined to resolve which of several regulations was controlling, instead hinging the denial on its conclusion that the prohibition did not result in a taking of Willowbrook's property.

When reviewing EHB decisions, the court must determine whether the record contains substantial evidence to support the board's findings of fact, and whether the board committed errors of law or constitutional violations. *Einsig v. Pennsylvania Mines Corporation,* 69 Pa. Commonwealth Ct. 351, 452 A.2d 558 (1982).

The parties directed much of the argument in their briefs toward attempting to convince the court which of the competing regulations should apply to the current dispute. A review of the statutory and regulatory framework will put those contentions in perspective.

Section 4.5(h) of the Pennsylvania Surface Mining Conservation and Reclamation Act, 52 P.S. §1396-.4e(h) provides:

Subject to valid existing rights as they are defined under §522 of the Surface Mining Control

and Reclamation Act of 1977, 30 U.S.C. §1201 et seq., no surface mining operations except those which existed on August 3, 1977 shall be permitted: . . . (5) within three hundred feet from any occupied dwelling, unless waived by the owner thereof. . . .

On the date of the enactment of that section, October 10, 1980, the referenced section of the federal surface mining act (SMCRA) similarly provided:

After the enactment of this act and subject to valid existing rights no surface coal mining operations except those which existed on the date of enactment of this Act shall be permitted . . . (5) Within three hundred feet from any occupied dwelling, unless waived by the owner thereof. . . .

30 U.S.C. §1272(e).

Although the federal statute does not itself define "valid existing rights", the federal Office of Surface Mining promulgated regulations which did define the term; that federal definition provided:

Valid Existing Rights Means:

(a) Except for haul roads,

(1) Those property rights in existence on August 3, 1977, that were created by a legally binding conveyance, lease, deed, contract, or other document which authorizes the applicant to produce coal by a surface coal mining operation; and

(2) The person proposing to conduct surface coal mining operations on such lands either

(i) Had been validly issued, on or before August 3, 1977, all State and Federal permits necessary to conduct such operations on those lands, or

(ii) Can demonstrate to the regulatory authority that the coal is both needed for, and immediately adjacent to, an on-going surface coal mining operation for which all mine plan approvals and permits were obtained prior to August 3, 1977.

30 C.F.R. §761.5

On July 31, 1982, the Pennsylvania Environmental Quality Board promulgated regulations governing surface coal mining; those regulations defined "valid existing rights" as

(i) Except for haul roads, those property rights in existence on August 3, 1977, that were created by a legally binding conveyance, lease, deed, contract, or other document which authorizes the applicant to produce minerals by a surface mining operation; and provided further that the person proposing to conduct surface mining operations on such lands holds all current State and Federal permits necessary to conduct such operations on those lands and either held those permits on August 3, 1977 or had made by that date a complete application for the permits, variances, and approvals, required by the Department.

25 Pa. Code §86.1

Thus, the above federal and state regulations— both known as embodying the "all permits" test— similarly provide that, absent a landowner's consent, a surface mine operator may only be exempt from the 300-foot limitation if it had all of the necessary mining permits on the effective date of the federal legislation, August 3, 1977.

Subsequently, the federal Office of Surface Mining has amended 30 C.F.R. §761.5 to provide in part:

(a) Except for haul roads, that a person possesses valid existing rights for an area protected under section 522(e) of the Act on August 3, 1977, if the application of any of the prohibitions contained in that section to the property interest that existed on that date would effect a taking of the person's property which would entitle the person to just compensation under the Fifth and Fourteenth Amendments to the United States Constitution.

Willowbrook, which does not have the landowner's consent, concedes that because it did not have all of the permits required before the effective date of the federal act, it cannot prevail under the "all permits" test. Consequently, Willowbrook contends that the EHB erred by applying the state regulation (which embodies the "all permits" test) instead of the amended federal regulation (which defines valid existing rights by the inquiry into whether or not the regulation will effect a taking). DER counters that the state regulation is valid and that the EHB did not err by basing its decision on that regulation.

The state statute, quoted above, plainly provides that the federal definition of valid existing rights is controlling. Because the statute is not ambiguous, we reject DER's invitation to explore, through principles of statutory construction, the legislative intent underlying the section. The state regulation purporting to define "valid existing rights" is of no legal effect because it breaches provisions of the statute under which it was promulgated. *Commonwealth v. Harmar Coal Company,* 452 Pa. 77, 306 A.2d 308 (1973), *appeal dismissed,* 415 U.S. 903 (1974).

However, on March 22, 1985, the United States District Court for the District of Columbia nullified the effect of the *amended* federal regulation, remanding it

to the Secretary of the Department of Interior because that department had not promulgated the later version of the regulation in accordance with the notice provisions of the federal Administrative Procedures Act. *In Re: Permanent Surface Mining Regulation Litigation,* F. Supp. , No. 79-1144 (D.D.C. March 22, 1985).

Thus, for the present case, the relevant and controlling definition of "valid existing rights" is that embodied in the 1979 federal regulation— the "all permits" test, and as we mentioned above, Willowbrook candidly conceded that it cannot meet that test.

Nevertheless, in addition to our determination of the controlling regulation, we cannot avoid considering whether the application of the statutory prohibition of mining within 300 feet of a dwelling works a taking of Willowbrook's property in violation of the Fifth and Fourteenth Amendments to the United States Constitution.

The Pennsylvania Surface Mining Act is an exercise of the state police power, that "inherent power of the body politic to enact and enforce laws for the promotion of the general welfare". *Commonwealth v. Barnes & Tucker Company,* 472 Pa. 115, 123, 371 A.2d 461, 465, *appeal dismissed,* 434 U.S. 807 (1977). As with all legislation, the act enjoys a presumption of constitutionality, and "one who challenges the constitutionality of the exercise of the state's police power . . . must overcome a heavy burden of proof to sustain that challenge." *Barnes & Tucker,* 472 Pa. at 123, 371 A.2d at 465.

Although a police power regulation must necessarily affect some property rights in order to serve the public good, that impact is constitutionally per-

missible and is not a taking if the regulation is an otherwise valid invocation of the police power.

The propriety of the exercise of the police power is a particularly difficult legal question with which the courts have long wrestled. In *Lawton v. Steele,* 152 U.S. 133 (1894), the Supreme Court provided the following analytical framework:

> To justify the state in thus interposing its authority in behalf of the public, it must appear —First, that the interests of the public generally, as distinguished from those of a particular class, require such interference; and, second, that the means are reasonably necessary for the accomplishment of the purpose, and not unduly oppressive upon individuals.

152 U.S. at 137.

Willowbrook does not seriously contend that the statutory prohibition fails to meet the first two elements of the *Lawton* test; the statute is a reasonable means to address a legitimate state interest. Rather, Willowbrook focuses its challenges on the final requirement, that the statute not be unduly oppressive upon individuals, recognizing that an unconstitutional taking of private property would be unduly oppressive.

In *Penn Central Transportation Company v. New York City,* 438 U.S. 104 (1978), the Supreme Court provided "relevant factors" that courts may employ in addressing taking questions. The first of those is the economic impact of the regulation, "particularly the extent to which the regulation has interferred with distinct investment-backed expectations." *Penn Central,* 438 U.S. at 124. That factor recognizes the principle of *Pennsylvania Coal Company v. Mahon,* 260 U.S. 393 (1922) that "a state statute that substantially furthers important public policies may so frustrate

distinct investment-backed expectations as to amount to a 'taking' ''. *Penn Central,* 438 U.S. at 127.

Applying the *Penn Central* analysis in *National Wood Preservers, Inc. v. Department of Environmental Resources,* 489 Pa. 221, 414 A.2d 37, *appeal dismissed,* 449 U.S. 803 (1980) the Pennsylvania Supreme Court compared the property values before and after the regulation as an indication of the economic impact, though recognizing that the comparison alone would not be conclusive of the issue.

The record of the present case indicates that Willowbrook failed to introduce any evidence of its property values; therefore, the EHB was unable to assess the impact of the regulation. Nothing in the record establishes that the statute deprived Willowbrook of all reasonable use of its property, *e.g.,* it failed to negate the possibility that it could reach the coal seam through deep mining. *Goldblatt v. Town of Hempstead, New York,* 369 U.S. 590 (1962).

The second of the relevant factors which the Supreme Court identified in the *Penn Central* case is the character of the challenged governmental action. "The greater the extent to which governmental interference with property can be characterized as a physical intrusion, the more likely it is that such interference will be considered an unreasonable exercise of the police power." *National Wood Preservers,* 489 Pa. at 237, 414 A.2d at 45. However, "when the interference arises from some public program adjusting the benefits and burdens of economic life to promote the common good", the courts will be much more reluctant to determine that the challenged statute works a taking. *Penn Central,* 438 U.S. at 124.

The statutory prohibition against mining within 300 feet of an occupied dwelling clearly falls within the second of those descriptive categories; it does not

permit the government either entry or occupation of any part of an individual's property. It merely "adjusts the benefits and burdens of economic life" by protecting the welfare of dwelling occupants against the hazards and inconveniences of surface mining.

The state of the record supports the EHB's determination that Willowbrook failed to carry its burden of proving the statute unduly oppressive. Accordingly, we must agree with the EHB's conclusion that the statute did not result in an unconstitutional taking of Willowbrook's property and affirm.

ORDER

Now, October 7, 1985, the decision of the Pennsylvania Environmental Hearing Board, Docket No. 82-137-G, dated July 19, 1984, is affirmed.