371 S.E.2d 321

**Ernest COGAR, et al.**

v.

**Kenneth FAERBER, Commissioner, West Virginia Department of Energy and Spring Ridge Coal Company.**

**No. 17646.**

Supreme Court of Appeals of West Virginia.

May 23, 1988.

John McFerrin, Charleston, D. Clinton Gallaher, IV, Fayetteville, for appellants.

Stephen Barcley, Richmond, for appellees.

Ricklin Brown, Bowles, McDavid, Graff & Love, Charleston, Terry D. Reed, Hymes & Coontz, Buckhannon, for intervenor.

McGRAW, Justice:

This is an appeal from a final order of the Circuit Court of Kanawha County affirming the decision of the Reclamation Board of Review approving a modification of Intervenor Spring Ridge Coal Company's Permit No. U–138–83. Under that permit, the Intervenor has operated the Smoot Mine since 1983. The Appellants, residents of the area, object to the modification of the permit to allow new openings to the underground mine because the openings are within one hundred feet of a public road and three hundred feet of occupied dwellings, in violation of West Virginia Code § 22A–3–22(d)(3) and (4) (1985 Re-

placement Vol.).[1] The Appellee contends, and the Board of Review agreed, that the cited code sections are not applicable because the Intervenor held valid existing rights on August 3, 1977, the effective date of the relevant subsection. The Intervenor additionally asserts the applicability of several other exemptions from the cited distance prohibitions.

■ Surface mining operations in West Virginia are regulated by the Department of Energy pursuant to a cooperative agreement with the Secretary of the United States Department of the Interior under Public Law 95–87, as detailed in West Virginia Code § 22A–3–1 *et seq.* (1985 Replacement Vol.). Under this agreement, state rules do not have to be identical to the regulations promulgated by the federal government, so long as they are not inconsistent with them. 30 U.S.C. § 1211(c)(9) (1982). The latest federal rule defining valid existing rights was withdrawn pursuant to a court order involving a procedural defect in promulgating that rule. *See In re Permanent Surface Mining Regulation Litigation,* 620 F.Supp. 1519 (D.D.C.1985), *aff'd in part, rev'd in part sub nom. National Wildlife Federation v. Hodel,* 839 F.2d 694 (D.C.Cir.1988). No new rule has yet been issued by the Department of the Interior, and the regulations adopted under the various state programs remain in effect. Notice of Suspension, 51 Fed.Reg. 41952 (1986). The Legislative Rules filed by the West Virginia Department of Energy provide in pertinent part that "a person possesses valid existing rights if he can demonstrate that the coal is immediately adjacent to an ongoing mining operation which existed on August 3, 1977 and is needed to make the operation as a whole economically viable." W.Va.C.S.R. § 38–2–2.119 (1983).

So far as our research reveals, this is the first case in which it is necessary to interpret the meaning of "valid existing rights" as defined in the West Virginia regulations. In a nutshell, the Appellee and the Intervenor argue that the Intervenor has valid existing rights because the entire 1825 acre tract in Webster County for which the Intervenor has mineral rights should be considered a single mining operation. Further, they argue that since mining has been conducted in various locations on that tract since before August of 1977, that the various activities on the tract should be considered a single ongoing operation which has been in existence since before that date. Finally, they argue that, without this modification of the permit, the Smoot mine would have to be closed within a brief period of time but that, with this modification, the mine can be productively worked for another twenty years, thus making the modification necessary for continued economic viability.

There is no question that mining of some sort has been conducted on the 1825 acre tract since well before August of 1977. A mine known as Number Eleven was operated from 1975 through 1981. A second mine, known as Beaver Run, was operated from 1981 through 1985. The Smoot Mine, which is the mine in question here, obtained a permit and began operating in 1983. The Appellee and the Intervenor, of course, argue that, because the entire tract should be treated as a single mining operation, the fact that the Smoot mine was only begun in 1983 is irrelevant to our decision today. No contention is made that the proposed opening is immediately adjacent to any portion of the Number Eleven mine which was in existence in August of 1977. Instead, both the Appellee and the Intervenor contend, essentially, that the regulatory phrase "immediately adjacent" has no

---

**1.** The relevant portions of the statute declare that:

(d) After the third day of August, one thousand nine hundred seventy-seven, and subject to valid existing rights, no surface mining operations, except those which existed on that date, shall be permitted: ...

(3) Within one hundred feet of the outside right-of-way line on any public road, ...

(4) Within three hundred feet from any occupied dwelling, ...

Surface mining operations include the surface impacts incident to an underground coal mine, as is the case here. W.Va.Code § 22A–3–3(w)(1) (1985 Replacement Vol.).

meaning in this context because the entire 1825 acre tract is a single ongoing mining operation and the new opening would be *on* that operation, not just *adjacent* to it.

Neither the statute nor the regulation provides us with a definition of "operation" which is helpful to us in this context.[2] Therefore, we must examine the entire statute and its purposes to determine the meaning of the term operation in this context. When it is necessary to construe a statute, the entire law must be examined, with a view to arriving at the true legislative intent. *Harbert v. Harrison County*, 129 W.Va. 54, 76, 39 S.E.2d 177, 191 (1946). It is the first purpose of the surface mining statute to expand the regulatory program involving surface mining and to protect the public and the environment from the adverse effects of surface mining operations. W.Va.Code § 22A–3–2(b)(1). Therefore, the courts should construe exceptions to the statute narrowly. Further, in reading the entire statute, it becomes clear that the term "surface mining operations" is most often used in connection with activities occurring within an area currently under permit or for which a permit application has been filed. Indeed, the statutory definition of "adjacent area" specifically applies to permit applications, renewal, revision, etc. The instant case, of course, comes to us on a permit modification application. The term adjacent area means "those land and water resources contiguous to or near a permit area...." W.Va.Code § 22A–3–3(c).

The regulatory definition of valid existing rights requires that the proposed activity subject to the statutory exception be "immediately adjacent" to the ongoing mining operation. The Intervenor apparently recognizes this connection between the term operation and the area covered by a permit. As an alternative to its single ongoing operation argument, the Intervenor contends that the term "immediately

adjacent," as it appears in the regulatory definition of valid existing rights, permits an interruption between the coal for which valid existing rights are claimed and the ongoing mining operation which existed on August 3 1977. We disagree. The reading proposed by the Intervenor would emasculate the prohibitions set forth in Code § 22A–3–22(d). In the context of valid existing rights, we read the statute to mean that an operation includes only that area covered by a permit or permit application.

The 1825 acre tract involved in this case is by no means an unusually large tract of land covered by a single mineral lease. Indeed, it is not uncommon to find recorded transfers of mineral rights in the tens and even hundreds of thousands of acres. *See West Virginia Tax Department, Natural Resources Sales and Lease Report* (Jan. 27, 1988). If the public and the environment are to be protected, operators cannot be allowed to circumvent the permit process and statutory restrictions for tracts of land which measure in the hundreds of square miles. This Court finds that "valid existing rights" must involve more than a mere expectation of conducting coal mining. Simply obtaining a lease of mineral rights to an area does not confer valid existing rights upon an operator within the meaning of the Surface Coal Mining and Reclamation Act. Such an interpretation of the statute and regulations would greatly weaken the ability of the state to protect its citizens from the adverse effects of surface mining. Therefore, in order to have valid existing rights so as to provide an exception to West Virginia Code § 22A–3–22(d), an operator must have, by August 3, 1977, completed its portion of the application process for all the necessary state and federal permits to conduct surface mining in an area contiguous to the proposed operations. *See Willowbrook Mining Company v. Commonwealth of Pennsylvania*, 92 Pa.Commw. 163, 499 A.2d 2 (1985).

---

**2.** The definition in West Virginia Code § 22A–3–3(p) provides that "'operation' means those activities conducted by an operator who is subject to the jurisdiction of this article." We do not find this definition to provide us with meaningful guidance in making the determination before us today.

As an alternative to the valid existing rights exemption theory, the Appellee generally asserts and the Intervenor thoroughly argues that Code Subsection 22A-3-22(a)(5) exempts the Intervenor from all of the provisions of Section 22. Subsection 22(a)(5) says that "[t]he requirements of this section shall not apply" in certain specified situations, including "where substantial legal and financial commitments in the operations" existed prior to January 4, 1977. The Intervenor asserts that it had made substantial legal and financial commitments prior to that date and that none of Section 22, including the distance prohibitions of Subsection 22(d), may be applied in this case.

■ We have already rejected the Intervenor's contention that "operations" should be read to include the entire 1825 acre tract. With regard to the area currently under consideration, the Intervenor has only attempted to make a showing that the mineral rights (not the surface rights) to that land were under lease as of January 1977. We require more than simply obtaining a mineral lease to constitute "substantial legal and financial commitments" as contemplated by the statute. The legislative history for the federal act on which our state statute is based makes it clear that "mere ownership or acquisition costs of the coal itself or the right to mine it" is not enough to constitute substantial legal and financial commitments. H.R.Rep. No. 218, 95th Cong., 1st Sess. 95 (1977), 1977 U.S.Code Cong. and Admin.News 593, 631. The Department of Energy's regulation, W.Va.C.S.R. § 38-2-2.109, lists examples of the types of commitments which would be required, including power plants, railroads, coal handling and preparation facilities, and other capital intensive activities based on a long term coal contract. *Id.* The Department of Energy's regulation, which we find acceptable, closely tracks the federal rule, which has been approved by the federal courts. *National Wildlife Federation,* 839 F.2d at 747–48.

■ Additionally, we must read the exemptions of Subsection 22(a)(5) to apply only to the unsuitability designation process requirements of Subsection 22(a), not to the entire Section 22. The purpose of Subsection 22(a) is to set guidelines for delegation to the Commissioner of the Department of Energy the responsibility for designating certain land areas as unsuitable for surface mining. Subsection 22(d), however, lists lands directly declared by the Legislature to be unsuitable, a per se designation, without any delegation to the Commissioner. *See National Wildlife Federation,* 839 F.2d at 748–49. Although Subsection 22(a)(5) speaks of exemptions to the requirements of "this section," both the delegated designations and per se prohibitions can only be applied if we read the exemptions to apply to "this subsection."

■ Where the meaning of the statute is not clear, we must construe it so that each provision has import or effect. *Dillon v. Board of Education,* 177 W.Va. 145, 148, 351 S.E.2d 58, 61 n. 4 (1986). To adopt the Intervenor's position regarding the interpretation of Subsection 22(a)(5) would make meaningless the provisions and requirements in Subsection 22(d). This we decline to do. "In ascertaining legislative intent, effect must be given to each part of the statute and to the statute as a whole so as to accomplish the general purpose of the legislation." Syl.Pt. 1, *Smith v. State Workmen's Compensation Commissioner,* 159 W.Va. 108, 219 S.E.2d 361 (1975). Here, the substantial legal and financial commitment exception will be read to apply only to Subsection 22(a), and not to the remaining parts of Code § 22A-3-22.

■ Finally, the Intervenor argues that the refusal of a permit modification based on the statute is an unconstitutional taking because it denies the Intervenor any economically viable use of its property rights, citing *Nollan v. California Coastal Commission,* 483 U.S. 825, 107 S.Ct. 3141, 97 L.Ed.2d 677 (1987). The Surface Coal Mining and Reclamation Act is an exercise of the state's police power and as such necessarily affects rights of some in order to serve the public good. *Cf. DeCoals, Inc. v. Board of Zoning Appeals,* 168 W.Va. 339, 284 S.E.2d 856 (1981) (zoning as a valid exercise of police power). The statute is

presumed constitutional and a challenge to the constitutionality of the exercise of the state's police power must overcome a heavy burden to be successful. *See Town of Stonewood v. Bell,* 165 W.Va. 653, 270 S.E.2d 787 (1980); *Anderson v. The City of Wheeling,* 150 W.Va. 689, 149 S.E.2d 243 (1966).

 The Federal Surface Mine Control and Reclamation Act has been upheld against facial constitutional challenges by the United States Supreme Court. *Hodel v. Virginia Surface Mining and Reclamation Association,* 452 U.S. 264, 101 S.Ct. 2352, 69 L.Ed.2d 1 (1981). In addition, courts have examined provisions similar to the one in question here and have not found them to be unconstitutional. *In re Permanent Surface Mining Regulation Litigation,* 620 F.Supp. 1519; *Willowbrook Mining Company,* 499 A.2d 2. Although the Intervenor argues that without this modification to the permit it would have to close the mine prematurely, the Intervenor did not present specific evidence of the property values involved or of how much of the 1825 acre tract has already been economically mined under this regulation. Without this sort of evidence, it appears that, while the value of the entire tract may be reduced somewhat by the denial of the permit, the Intervenor has, nevertheless productively mined the tract for some thirteen years. A slight diminution in the value of the property is not enough to constitute an uncompensated taking, nor does it deprive the owner of all reasonable use of its property. *See Goldblatt v. The Town of Hempstead,* 369 U.S. 590, 82 S.Ct. 987, 8 L.Ed.2d 130 (1962).

For the reasons stated above, the decision below is reversed and remanded with instructions to deny the modification of permit.

Reversed and Remanded.