379 S.E.2d 764

**Eddie A. COGAR, Roland Carpenter, Sharon Carpenter, Gail Cogar, and Carl Cogar**

v.

**Hon. A.L. SOMMERVILLE, Jr., Judge of the Circuit Court of Webster County; Spring Ridge Coal Company, Inc.; and Pardee & Curtin Lumber Co.**

No. 18711.

Supreme Court of Appeals of West Virginia

March 28, 1989.

Joshua I. Barrett, Ditrapano & Jackson, Charleston, for Cogar and Carpenter.

Terry D. Reed, Buckhannon, for Spring Ridge Coal Co.

Joyce H. Morton, Morton & Morton, Webster Springs, for Pardee & Curtin Lumber Co.

MILLER, Justice:

In this original proceeding, we are asked to grant a writ of prohibition to prevent enforcement of an injunction, issued by the Circuit Court of Webster County, which prohibits the petitioners from interfering with the mining activities of the respondent, Spring Ridge Coal Company (Spring Ridge). Spring Ridge contends that the petitioners' rights to prevent mining operations within three hundred feet of an occu-

pied dwelling under the West Virginia Surface Coal Mining and Reclamation Act (SCMRA), W.Va.Code, 22A–3–1 *et seq.* (1985),[1] were waived as a result of broad form waivers of surface damage and subjacent support in old deeds severing the minerals from the surface. We disagree, and we grant the writ of prohibition prayed for.

## I.

On October 25, 1971, Spring Ridge leased a 1,825–acre tract of coal and mining rights from Pardee & Curtin Lumber Company (Pardee & Curtin). Included with this tract were two smaller tracts, one of 18 acres and 74 square rods and another of 268 acres. The coal and mining rights under the 18–acre tract were reserved by Emery and Maud Ehret in 1914 in their deed conveying the surface to W.S. Short (the Short deed).[2] After several conveyances, the surface rights conveyed in the Short deed were partially vested in the petitioners, and the coal and mining rights were vested in Spring Ridge by lease from Pardee & Curtin. The coal and mining rights under the 268–acre tract were reserved by Lewis and Catherine Ehret in 1907 in their deed conveying the surface rights to C.D. Howard and J.N. Berthy (the Howard deed).[3] The surface rights to a portion of the 268–acre tract are now vested in petitioners, and the coal and mining rights are vested in Spring Ridge.

1. W.Va.Code, 22A–3–22(d), provides, in pertinent part:

    "After the third day of August, one thousand nine hundred seventy-seven, and subject to valid existing rights, no surface mining operations, except those which existed on that date, shall be permitted:

    \*    \*    \*    \*    \*    \*

    "(4) Within three hundred feet from any occupied dwelling, unless waived by the owner thereof[.]"

2. The Short deed, dated April 20, 1914, provides as follows:

    "Excepting, the parties of the first part reserves [*sic*] for themselves, their heirs, executors and administrators all coal deposits underlying the surface of the aforesaid described tract of land, together with the free uninterrupted right of way into, upon and under said land, at such points and in such manner as may be proper and necessary for the purpose

of digging, draining and ventilating, and carrying away said coal, *hereby waiving all surface damages of any sort arising therefrom, or from the removal of said coal.*" (Emphasis added).

3. The Howard deed, dated June 10, 1907, provides:

    "[T]he party of the first part doth however *reserve all* the coal in and under the above described lands together with the free and uninterrupted right of way into, upon and under said lands for the purpose of digging mining, draining, ventilating, coaking and carrying away said coal *hereby waiving all damages arising therefrom or from the removal of all said coal* together with the privilege of removing through said discribed [*sic*] lands other coal ... belonging to said party of first part their heirs or assigns or which may hereafter be acquired by them[.]" (Emphasis added).

In a prior case involving some of the same parties, area residents had objected before the West Virginia Department of Energy and the Reclamation Board of Review to modification of Spring Ridge's permits to allow new openings to its underground mine within one hundred feet of a public road and three hundred feet of an occupied dwelling in violation of W.Va. Code, 22A–3–22(d)(3) and –22(d)(4). *Cogar v. Faerber*, 179 W.Va. 600, 371 S.E.2d 321 (1988). In our decision in *Cogar*, dated May 23, 1988, we held that Spring Ridge did not possess "valid existing rights," which would exempt it from the provisions of SCMRA, and remanded the case with instructions to deny the modification. The Circuit Court of Kanawha County has not entered an order implementing this directive.

On August 9, 1988, Spring Ridge filed an action in the Circuit Court of Webster County against Mr. Cogar and other surface owners trying to enforce the SCMRA distance barriers. Spring Ridge argued that the petitioners had waived their rights under W.Va.Code, 22A–3–22(d)(4), pursuant to the waiver provisions of the 1907 and 1914 severance deeds. The complaint sought both injunctive relief and monetary damages.

While Spring Ridge's motion for a preliminary injunction was pending, Pardee & Curtin instituted a similar action as the lessor of the property which Spring Ridge is mining. On October 3, 1988, the circuit court held an evidentiary hearing in the case of *Spring Ridge Coal Co. v. Eddie Cogar, et al.*, Civil Action No. 88–C–47. The circuit court found a substantial likelihood that Spring Ridge would prevail in its claim and entered an order enjoining the petitioners from interfering with the mining activities of Spring Ridge. The effect of the order was to allow Spring Ridge to continue mining operations within three hundred feet of an occupied dwelling. No action has been taken in the case of *Pardee & Curtin Lumber Co. v. Eddie Cogar, et al.*, Civil Action No. 88–C–48.

## II.

We first consider the petitioners' argument that the injunction should be vacated on constitutional grounds. The petitioners rely heavily on our decision in *Webb v. Fury*, 167 W.Va. 434, 282 S.E.2d 28 (1981), a case in which a conservationist and two conservation organizations had protested the activities of the DLM Coal Corporation and had sought the assistance of two federal agencies to prevent alleged pollution of the Buckhannon River. The petitioners in *Webb* filed a citizen's complaint with the Office of Surface Mining and requested an evidentiary hearing with the Environmental Protection Agency. Concerns were also voiced about strip mining along the Buckhannon River in the organizations' nonprofit newsletter.[4] In response, DLM filed a suit alleging these communications were defamatory.

The petitioners in *Webb* then sought a writ of prohibition in this Court, contending that the defamation suit was in direct contravention of their constitutional rights of petition and freedom of speech.[5] The Court found that DLM's defamation action impermissibly infringed upon the petitioners' constitutional right to petition the government for redress of grievances and granted a writ of prohibition preventing further proceedings in the defamation action.

The present case differs from *Webb* in that there is no claim that these petitioners have invoked their constitutional right of petition or free speech. In the administrative proceedings below, they merely sought to exercise their rights as interested parties. Moreover, we have established law that compels us to avoid deciding constitutional issues whenever possible, as

4. DLM was not identified in the newsletter; however, all of the permit numbers shown on a map printed with the article belonged to DLM.

5. The right to petition the government embodied in the First Amendment of the United States Constitution is also protected by W.Va. Const. art. III, § 16, which provides that "[t]he right of the people ... to apply for a redress of grievances shall be held inviolate."

stated in Syllabus Point 5 of *In Re Tax Assessments Against Pocahontas Land Corp.*, 158 W.Va. 229, 210 S.E.2d 641 (1974):

> "When it is not necessary in the decision of a case to determine a constitutional question, this Court will not consider or determine such question."

*See also State v. Griffith*, 168 W.Va. 718, 285 S.E.2d 469 (1981); *Priester v. Hawkins*, 168 W.Va. 569, 285 S.E.2d 396 (1981); *Edgell v. Conaway*, 24 W.Va. 747 (1884).

## III.

The dispositive issue here is whether the broad form waivers contained in the two severance deeds, *see* notes 2 and 3, *supra*, constitute a waiver of the petitioners' statutory right not to have mining operations conducted within three hundred feet of an occupied dwelling.[6] This appears to be the first case in which it has been necessary for a court to interpret the meaning of "waiver" as used in W.Va.Code, 22A–3–22(d)(4),[7] or in other statutes or regulations governing surface mining operations. The respondents' sole contention is that the broad form waiver provisions contained in the 1907 and 1914 severance deeds are the type of waivers contemplated by the statute. The petitioners contend that the stat-

utory and regulatory scheme underlying SCMRA makes it clear that the waiver referred to in W.Va.Code, 22A–3–22(d)(4), must be knowingly made and must be specific as to the distance from the dwelling at which mining operations are permitted.[8]

█ Neither the West Virginia statute nor applicable administrative regulations provide us with a definition of "waiver."[9] However, as we recognized in Syllabus Point 1 of *Canestraro v. Faerber*, 179 W.Va. 793, 374 S.E.2d 319 (1988), state law must be consistent with and no less stringent than the Surface Mining Control and Reclamation Act of 1977, 30 U.S.C. § 1201, *et seq.*, and accompanying federal regulations:

> "When a provision of the West Virginia Surface Coal Mining and Reclamation Act, *W.Va.Code*, 22A–3–1 *et seq.*, is inconsistent with federal requirements in the Surface Mining Control and Reclamation Act, 30 U.S.C. § 1201 *et seq.*, the state act must be read in a way consistent with the federal act."

*See also Cogar v. Faerber, supra.* Thus, it is necessary for us to examine the federal surface mining law and regulations along with our own.

6. In view of our ruling on the waiver issue, we do not address the question of whether the decision in *Cogar v. Faerber, supra,* should be given res judicata or preclusive effect in this proceeding. In *Cogar,* which concerned the same mining operation involved here, we concluded that Spring Ridge did not possess "valid existing rights" and, therefore, was subject to the requirements of W.Va.Code, 22A–3–22(d). *See* note 1, *supra.* As the waiver question had not been decided below, we did not pass on that issue in the *Cogar* appeal.

It should be noted that in the administrative proceeding below Spring Ridge neither argued nor attempted to prove that the petitioners had waived the three-hundred-foot requirement. Spring Ridge relied exclusively on the valid existing rights exception. After *Cogar* was decided, Spring Ridge apparently made no attempt to obtain a ruling on the waiver issue from the West Virginia Department of Energy. This raises a question of whether Spring Ridge failed to exhaust its administrative remedies before instituting this action in the circuit court. *See Burlington Northern R. Co. v. United States*, 752 F.2d 627 (Fed.Cir.1985); *Bank of Wheeling v.*

*Morris Plan Bank & Trust*, 155 W.Va. 245, 183 S.E.2d 692 (1971).

7. For the pertinent provisions of W.Va.Code, 22A–3–22(d)(4), *see* note 1, *supra.*

8. As we noted in *Cogar v. Faerber, supra,* SCMRA regulates the surface impact incident to an underground coal mine. W.Va.Code, 22A–3–14(b)(1); W.Va.Code, 22A–3–3(w)(1).

9. The only applicable legislative rule filed by the West Virginia Department of Energy is C.S.R. § 38–2–3J (1983), which provides:

> "Where the proposed surface coal mining operation would be conducted within three hundred feet (300') (measured horizontally) of any occupied dwelling, the applicant shall submit with the application a written waiver from the owner of the dwelling or a demonstration of valid existing rights; provided, that if a waiver was obtained prior to August 3, 1977, a new waiver need not be obtained; provided further, that valid waivers shall remain in any subsequent transfer, sale or reassignment of the permit."

Our statutory proscription against mining operations within three hundred feet of an occupied dwelling is patterned after and mirrors the language of Section 522(e) of the federal act, 30 U.S.C. § 1272(e), which provides, in part, that "after August 3, 1977, and subject to valid existing rights no surface coal mining operations except those which exist on August 3, 1977, shall be permitted ... within three hundred feet from any occupied dwelling, *unless waived by the owner thereof*[.]" (Emphasis added).[10]

The history of the federal surface mining statute, including the many challenges to it, and particularly its accompanying regulations, is reviewed at some length in *National Wildlife Fed'n v. Hodel*, 839 F.2d 694 (D.C.Cir.1988). The Court of Appeals briefly discussed Section 522(e) and pointed out that the type of lands listed in it have been "declared by Congress to be unsuitable for mining." 839 F.2d at 749. Obviously, the proximity of mining to homes, public schools, and churches can cause adverse consequences.

The Secretary of the Interior promulgated permanent regulatory program regulations in 1979 which prompted numerous legal challenges. The initial regulations concerning the prohibition on mining within three hundred feet of an occupied dwelling, unless waived, provided, in part, that no mining operations were to take place after August 3, 1977, unless "[t]he owner thereof has provided a written waiver consenting to surface coal mining operations closer than 300 feet[.]" 44 Fed.Reg. 15343-44 (1979). The requirement that the waiver be in writing was challenged by the National Coal Association and upheld in *In Re Permanent Surface Mining Regulation Litigation*, 14 E.R.C. 1083, 1092 (D.D.C.1980):

"The court finds these regulations are consonant with the Act. The Act explicates one of its purposes as the protection of the rights of property owners. Section 102(b) of the Act, 30 U.S.C.

§ 1202(b). Sections 201(c)(2) and 501(b) of the Act grant the Secretary authority to promulgate regulations 'necessary to carry out the purposes and provisions of this Act.' The Secretary's requirement of a written waiver merely employs a procedural safeguard to protect private property rights. *See Mourning v. Family Publications Service, Inc.*, 411 U.S. 356, 369 [93 S.Ct. 1652, 1660, 36 L.Ed.2d 318] (1972) (regulations permissible to prevent violation of Act's policy objectives). Moreover, the common law, while it does establish the substantive standards of knowledge, intention, and voluntariness, fails to specify the requisite form of waiver. The Secretary's regulation seeks to ensure these standards are protected; it is, therefore, consonant with the Act." (Footnote omitted).

The current regulation also prohibits mining within three hundred feet of an occupied dwelling, except when "[t]he owner thereof has provided a written waiver consenting to surface coal mining operations closer than 300 feet[.]" 30 C.F.R. § 761.11(e)(1) (1988). 30 C.F.R. § 761.12(e) (1988) sets forth the procedure an applicant must follow in order to obtain a permit to mine less than three hundred feet from an occupied building based on a waiver:

"(1) Where the proposed surface coal mining operations would be conducted within 300 feet, measured horizontally, of any occupied dwelling, the permit applicant shall submit with the application a written waiver by lease, deed, or other conveyance from the owner of the dwelling, *clarifying that the owner and signator had the legal right to deny mining and knowingly waived that right.* The waiver shall act as consent to such operations *within a closer distance of the dwelling as specified.*

"(2) Where the applicant for a permit after August 3, 1977, had obtained a *valid waiver* prior to August 3, 1977, from the owner of an occupied dwelling

---

**10.** Section 522(e) also prohibits, subject to valid existing rights, surface mining on lands within the National Park or National Wildlife Refuge systems, within a national forest, within areas where mining might adversely affect a designated historic site, and within three hundred feet of public schools and churches.

to *mine within 300 feet of such dwelling,* a new waiver shall not be required.

"(3)(i) Where the applicant for a permit after August 3, 1977, had obtained a valid waiver from the owner of an occupied dwelling, that waiver shall remain effective against subsequent purchasers who had actual or constructive knowledge of the existing waiver at the time of purchase.

"(ii) A subsequent purchaser shall be deemed to have constructive knowledge if the waiver has been properly filed in public property records pursuant to State laws or if the mining has proceeded to within the 300–foot limit prior to the date of purchase." (Emphasis added).

*See* 48 Fed.Reg. 41350 (1983).

■ Upon examination of the federal law and pertinent regulations, it is apparent that the waiver contemplated is one which is knowingly made by the owner and which specifies the distance from the occupied dwelling where mining operations may take place. Here, the old severance deeds waived only surface damages and did not authorize mining operations within three hundred feet of an occupied dwelling. We believe that permitting a waiver of the three-hundred-foot requirement in these circumstances would be contrary to one of the purposes of Congress in enacting the federal surface mining law—the protection of property owners.[11]

This is consistent with our mining cases holding that a severance deed is to be construed in light of the conditions and reasonable expectations of the parties at the time it is made. As a consequence, mining methods not contemplated at the time of the severance deed may not be utilized. *See Brown v. Crozer Coal & Land Co.,* 144 W.Va. 296, 107 S.E.2d 777 (1959) (auger mining); *West Virginia–Pittsburgh Coal Co. v. Strong,* 129 W.Va. 832, 42 S.E.2d 46 (1947) (strip mining). It would be impossible to conceive that the parties to old severance deeds would have any contemplation of waiving future statutory rights.

Furthermore, in Syllabus Point 1, in part, of *Winnings v. Wilpen Coal Co.,* 134 W.Va. 387, 59 S.E.2d 655 (1950), we held that a coal severance deed containing broad mining rights would not be construed to waive the right of subjacent support "unless [the surface owner's] intention so to do clearly appears from express language or by necessary implication."[12] It is doubtful that the waiver in the Howard deed, *see* note 3, *supra,* is sufficiently specific to constitute a waiver of surface supports under *Winnings,* but this is a point we need not decide. It is sufficient to state that under *Winnings,* waivers of this nature are strictly construed. Accordingly, we cannot imply a waiver of this statutory right.

Finally, our conclusion is in accord with the general principle that a release or waiver of liability or damages covers only those items that are within the ordinary contemplation of the parties. As we stated in Syllabus Point 2 of *Conley v. Hill,* 115 W.Va. 175, 174 S.E. 883 (1934), *overruled on other grounds, Thornton v. Charleston Area Medical Center,* 158 W.Va. 504, 213 S.E.2d 102 (1975):

11. We also believe the circuit court erred in issuing the preliminary injunction against the petitioners. Under the surface mining law, any citizen who has an interest which is or may be adversely affected by the issuance of a mine permit, or any significant alteration thereof, is entitled to a hearing before the Reclamation Board of Review and an appeal to the circuit court. *See* W.Va.Code, 22–4–2 and –3; W.Va. Code, 22A–3–20 and –21. *See generally* 2 Coal Law & Regulation ch. 46 (1985). The petitioners here simply exercised their statutory rights and should not have been enjoined from further doing so. Moreover, as we have just discussed, the circuit court was in error in determining

that a reasonable likelihood existed that Spring Ridge would prevail on the merits.

12. The complete text of Syllabus Point 1 of *Winnings* is:

"A landowner who conveys the coal underlying the surface of his land has an absolute property right to subjacent support for the surface in its natural state and, though he may sell or dispose of such right, he will not be deemed to have conveyed, parted with, or extinguished it unless his intention so to do clearly appears from express language or by necessary implication."

"A release ordinarily covers only such matters as may fairly be said to have been within the contemplation of the parties at the time of its execution."

*See also* Syllabus Point 2, *Cassella v. Weirton Constr. Co.,* 161 W.Va. 317, 241 S.E.2d 924 (1978). *See generally* 76 C.J.S. *Releases* § 38 (1952); 66 Am.Jur.2d *Releases* § 32 (1973).

We, therefore, find that a waiver of damages provision contained in a broad form coal severance deed is not the type of explicit waiver contemplated by and required by W.Va.Code, 22A–3–22(d)(4), before mining operations can be lawfully conducted within three hundred feet of an occupied dwelling. Accordingly, we grant the writ of prohibition and prohibit the enforcement of the injunction issued by the Circuit Court of Webster County.

Writ awarded.

McGRAW, J., participated and concurred in this decision, but departed from the Court prior to the preparation of the opinion. WORKMAN, J., did not participate in the consideration or decision of this case.