383 S.E.2d 774

**Elmer OOTEN, Ida Ooten and George Ooten, Plaintiffs–Appellants,**

v.

**Kenneth FAERBER, as Commissioner, West Virginia Department of Energy, Defendant–Appellee, a**

**Magnet Coal, Inc., Intervenor.**

**No. 18862.**

Supreme Court of Appeals of West Virginia.

July 5, 1989.

John McFerrin, Charleston, for Elmer Ooten and George Ooten.

Steve Barcley, Asst. Atty. Gen., Environment and Energy Div., Charleston, for W.Va. Dept. of Energy.

Robert McLusky, Jackson & Kelly, Charleston, for Magnet Coal, Inc.

McHUGH, Justice:

In this appeal involving a surface-mining permit, the key issue presented is whether there has been compliance with the stated conditions precedent to consideration of the "reinstatement" of the area earlier "deleted" from the surface-mining permit in question. Concluding that there has not been such compliance, we reverse the circuit court's affirmance of the Reclamation Board of Review's decision that there has been such compliance.

I

The facts as found by the Reclamation Board of Review are uncontroverted.

In 1980, Island Creek Coal Company applied for a surface-mining permit which would have allowed it to mine approximately 600 acres of land in Mingo County, West Virginia. These 600 acres, as originally applied for, would have included land within Riffe Branch. The appellants, the Ootens, reside in the Riffe Branch watershed area and may be adversely affected by the mining in the sought-for permit area. In response to the application by Island Creek Coal Company in 1980, the Director of the West Virginia Department of Natural Resources, David Callaghan, issued permit number 88–80. In the course of issuing permit number 88–80, Director Callaghan, pursuant to *W.Va.Code*, 20–6–11 [1971], then in effect, sent a letter to the applicant, Island Creek Coal Company. In relevant part this letter, "the Callaghan letter," provided as follows:

> Portions of the proposed operation may cause stream pollution, landslides, flooding and the destruction of future use of the area and surrounding areas, thereby destroying or impairing the health and property rights of others. Therefore, I am deleting a [fifty-two-acre] portion of your proposed operations as noted on the proposal map.

A reinstatement of the deleted area may be considered by the director's office in consultation with the Division of Reclamation after mining and *reclamation* has [sic] been *completed* on a significant portion *of the approved area* [of 548 acres] *and* a further determination can be made as to the possible effect of mining on the deleted area.

(emphasis added)

The Reclamation Board of Review issued a decision in 1981, in an appeal by another interested person, which stated, *inter alia,* that any further authorization to mine in the area "deleted" by the Callaghan letter "would be considered a 'significant revision' of the permit and would be subject to public notice, public comment and all other requirements ... as if an application was being made for a new permit."

After permit number 88–80 was issued, the West Virginia Department of Energy was created and has succeeded to the responsibilities for the regulation of surface mining previously administered by the West Virginia Department of Natural Resources. Similarly, Magnet Coal, Inc. is now the holder of permit number 88–80, having succeeded to the interest previously held by Island Creek Coal Company.

Magnet Coal, Inc. applied for a "significant revision" of permit number 88–80.[1]

This "significant revision" would purportedly "reinstate" the area of Riffe Branch that was originally "deleted" from that surface-mining permit. The method of operation which was originally proposed by Island Creek Coal Company for the "deleted" area is essentially the same as the method of operation which Magnet Coal, Inc. currently proposes for that area. At the same time it applied for a significant revision of permit number 88–80, Magnet Coal, Inc. applied also for renewal of permit number 88–80, as revised.

In response to the application for significant revision and renewal, the Commissioner of the West Virginia Department of Energy, acting through his agents, issued a letter dated November 20, 1987. In relevant part, this letter provided as follows: "Because the probable hydrologic consequences data is incomplete and therefore insufficient for the commissioner to make a cumulative hydrologic impact assessment, that section of the modification that allows for any reinstatement of the 'deleted' areas is hereby denied."

As a result of the Commissioner's decision of November 20, 1987, Magnet Coal, Inc. submitted the necessary additional information and a second "application" for "significant revision," by letter of December 15, 1987.[2]

1. The filing of an application for a "significant revision" of a surface-mining permit is authorized by *W. Va. Code,* 22A–3–19(b)(1)–(2) [1985, 1988]. The West Virginia Surface Coal Mining and Reclamation Act, *W. Va. Code,* 22A–3–1 to 22A–3–40, as amended, does not define a "significant revision." We note that *W. Va. Code,* 22A–3–19(a)(2) [1985, 1988] provides that if an application for renewal of a valid permit includes a proposal to extend the surface-mining operation beyond the boundaries authorized in the existing permit, except incidental boundary revisions, the applicant shall apply for a new permit. *See also W. Va. Code,* 22A–3–19(b)(3) [1985, 1988].

Nonetheless, under *W. Va. Code,* 22A–3–18 [1985], the same information is required in an application for a significant revision of an existing permit as is required in an application for a new permit, and under *W. Va. Code,* 22A–3–20 [1985], the advertising, comment and objection periods are the same for these two types of permit applications. An application for a new surface-mining permit must be accompanied by

a fee of $1,000. *W. Va. Code,* 22A–3–8(f) [1988] (previously $500). Any renewal application, including an application for a significant revision and renewal, must be accompanied by a fee of $2,000. *W. Va. Code,* 22A–3–19(a)(4) [1988] (previously no stated amount).

In light of our decision herein in favor of the appellants on the compliance issue, we do not decide whether Magnet Coal, Inc. should have filed an application for a new permit, rather than an application for a significant revision of an existing permit.

2. The appellants contend that the Commissioner's letter of November 20, 1987, was, by its own terms, a denial of the application for a "significant revision" of permit number 88–80 and that Magnet Coal, Inc. could not thereafter merely supplement such application with additional information on the probable hydrologic consequences but, instead, had to either appeal the denial or submit a whole new formal application. We do not decide this issue because of our disposition of this case in favor of the appellants on the compliance issue.

On January 27, 1988, the Commissioner of the West Virginia Department of Energy approved the "significant revision" and renewal of permit number 88–80. The approval for the deleted area calls for a phased reinstatement of mining in that area, rather than allowing all of the fifty-two acres in that area to be mined at once. The phased reinstatement is to proceed as follows:

The reinstatement plan initially approves 3 acres which is noted as 'A' on the Phase Sequence Map. These acres represent 6% of the 52 acres of 'deleted area.' The plan specifies that written approval must be granted by the inspector before further reinstatement and mining is allowed. It is found that this plan affords protection to the citizens of Riffe Branch by a careful control of the initial mining development in that watershed. The Cumulative Hydrologic Impact Assessment finds that the proposed operation should not cause material damage to the ground water and surface water hydrologic balance. Significant mining and reclamation have been completed on the approved area and after careful review of the mining it is determined that there will be no adverse effects to the citizens and property of Riffe Branch from the mining of the 'deleted' area.

On appeal by the Ootens, pursuant to *W.Va.Code*, 22A–3–21(b) [1985] and *W.Va. Code*, 22–4–2(a) [1985], a hearing was held, on May 5, 1988, before the Reclamation Board of Review. As of the date of that hearing, about sixty acres of the originally approved 548–acre tract had been disturbed; about forty acres of the 548–acre tract had been mined; about ten acres of the 548–acre tract had been backfilled; and *no* portion of the 548–acre tract had been revegetated.

The Reclamation Board of Review ruled, *inter alia*, that the decision of the Commissioner in approving the "significant revision" and renewal of permit number 88–80 was "lawful and reasonable."

On appeal by the Ootens, pursuant to *W.Va.Code*, 22–4–3(a) [1985], the Circuit Court of Kanawha County held, *inter alia*, that the requirements of the 1980 Callaghan letter had been met prior to the Department of Energy's approval to mine the "deleted area." The circuit court relied upon the Department of Energy's view that ten of the forty acres mined had been backfilled, a "significant portion" in the Department of Energy's opinion.

Pursuant to *W.Va.Code*, 22–4–3(e) [1985], the Ootens brought this appeal to this Court.[3]

## II

The parties agree that "the Callaghan letter" stated conditions precedent to "reinstatement" of the "deleted" fifty-two acres. The parties disagree as to whether there has been compliance with these conditions. We believe there clearly has not been compliance with the first of these two conditions and that there must be compliance with both conditions, according to that letter, prior to consideration of reinstatement of the deleted area.

■ The two conditions stated in the Callaghan letter were imposed as part of the administrative agency's regulatory powers to "delete" part of the land described in the application for a surface-mining permit.[4]

---

**3.** Pending our resolution of this case, this Court ordered a stay with respect to mining in Area "C" of the phased-in reinstatement, the area closest to the Ootens. We have heretofore vacated our previous stay with respect to Areas "A" and "B" of the phase sequence map. Based upon our holding in this opinion, all mining must cease in all three of these "areas" within the 52 acres "deleted" by the Callaghan letter, until approval is properly granted for such mining after compliance with the two conditions of that letter, or until those conditions to the permit are modified in accordance with the statute.

Mining may continue, of course, in the originally approved 548–acre tract, as the Callaghan letter stated only conditions precedent to "reinstatement" of the 52–acre tract.

**4.** *W.Va.Code*, 20–6–11 [1971], in effect at the time of the Callaghan letter, provided in pertinent part:

(e) If the director [of the Department of Natural Resources] finds that the overburden on any part of the area of land described in the application for a permit is such that experience in the State with a similar type of

The Callaghan letter is therefore akin to an administrative regulation or rule for purposes of the scope of judicial review of the administrative agency's "interpretation" of that letter as a regulatory document.

█ The Court held in syllabus point 3 of *Crockett v. Andrews*, 153 W.Va. 714, 172 S.E.2d 384 (1970): "While long standing interpretation of its own rules by an administrative body is ordinarily afforded much weight, such interpretation is impermissible where the language is clear and unambiguous." *Accord*, syl. pt. 2, *Habursky v. Recht*, 180 W.Va. 128, 375 S.E.2d 760 (1988). *See also Jewett v. Commissioner*, 455 U.S. 305, 318, 102 S.Ct. 1082, 1090, 71 L.Ed.2d 170, 180 (1982). *See generally* 1A N. Singer, *Sutherland [on] Statutes and Statutory Construction* § 31.06 (Sands 4th ed. rev. 1985) (interpretation of administrative regulations); 5 K. Davis, *Administrative Law Treatise* § 29:16 (2d ed. 1984) (judicial deference for administrative agency's interpretation of law). The administrative "interpretation" of the regulatory document here was developed shortly before this litigation and is therefore entitled to less weight than a long-standing interpretation. *See Atkins v. Parker*, 472

U.S. 115, 133 n. 3, 105 S.Ct. 2520, 2531 n. 3, 86 L.Ed.2d 81, 95 n. 3 (1985) (Brennan & Marshall, JJ., dissenting on another point).

█ The first condition stated in the Callaghan letter was that mining and reclamation must be completed on a significant portion of the approved area of 548 acres. Therefore, the first condition in the Callaghan letter unambiguously requires "reclamation," and the "reclamation" must be "completed." "Reclamation" under *W.Va. Code*, 22A–3–12(b)(19)–(20) [1985] requires *revegetation* of the affected area.[5] There has been *no* revegetation in this case. Accordingly, without any ambiguity, there has been *no* mining *and reclamation completed* on a significant portion of the approved area, as required by the first condition in the Callaghan letter. The Department of Energy's "interpretation" of the first condition in the Callaghan letter is clearly erroneous.[6]

The Callaghan letter's first condition requiring completed reclamation is consistent with the statute. The first stated purpose of the West Virginia Surface Coal Mining and Reclamation Act is "to protect the public and the environment from the adverse effects of surface-mining operations[.]"

operation upon land with similar overburden shows that one or more of the following conditions cannot feasibly be prevented: (1) Substantial deposition of sediment in stream beds, (2) landslides, or (3) acid-water pollution, the director may delete such part of the land described in the application upon which such overburden exists. *W.Va.Code*, 22A–3–18(e) [1985] now contains identical language, except that the Commissioner of the Department of Energy, as the successor to the Department of Natural Resources with respect to enforcement of the West Virginia Surface Coal Mining and Reclamation Act, is authorized to make the deletion.

5. As parts of the general environmental protection performance standards for surface mining, *W.Va.Code*, 22A–3–12(b)(19)–(20) [1985] mandate the operator to:

(19) Establish on the regraded areas, and all other lands affected, a diverse, effective and permanent vegetative cover of the same seasonal variety native to the area of land to be affected or of a fruit, grape or berry producing variety suitable for human consumption and capable of self-regeneration and plant succession at least equal in extent of

cover to the natural vegetation of the area, except that introduced species may be used in the revegetation process where desirable or when necessary to achieve the approved postmining land use plan;

(20) Assume the responsibility for successful revegetation, as required by subdivision (19) of this subsection, for a period of not less than five growing seasons, as defined by the commissioner, after the last year of augmented seeding, fertilizing, irrigation or other work in order to assure compliance with subdivision (19) of this subsection[.]

6. The Department of Energy "interpreted" the first condition in the Callaghan letter by comparing the ten acres which had been backfilled with the forty acres which had been mined and determined that the resulting twenty-five percent figure was a "significant portion." This "interpretation" is clearly erroneous. The Callaghan letter unambiguously requires a significant portion *of the approved area of 548 acres* to be mined *and reclaimed*. Under the statute reclamation requires revegetation in addition to backfilling. Stated another way, the first condition in the Callaghan letter clearly does not require only backfilling on a significant portion of the limited area actually mined.

*W.Va.Code,* 22A–3–2(b)(1) [1985]. *See also Cogar v. Faerber,* 179 W.Va. 600, 603, 371 S.E.2d 321, 324 (1988). To that end, a specific purpose of the Act is to "[a]ssure that adequate procedures are undertaken to reclaim surface areas as contemporaneously as possible with the surface-mining operations[.]" *W.Va.Code,* 22A–3–2(b)(5) [1985].

The statutory requirement of reclamation, including revegetation, of already mined areas, as well as the clear language of the Callaghan letter, refute the contention of Magnet Coal, Inc. that the "essence" of that letter was solely the second condition relating to the possible effect of future mining on the deleted area. The Callaghan letter contained two conditions: (1) the "significant portion of the approved area" condition, to demonstrate the performance quality of the permittee having no previous experience in West Virginia; and (2) the "possible effect on the deleted area" condition, connected by the word "and," not "or." "And" is a conjunctive, and the use of "and" here clearly makes both conditions necessary, not merely either of the two. "The disjunctive word 'or' can not generally be used in the sense of the conjunctive word 'and[.]'" Syl. pt. 10, in part, *Duckworth v. Stalnaker,* 68 W.Va. 197, 69 S.E. 850 (1910). "And" is a conjunction connecting words or phrases, expressing the idea that the latter is to be added to or taken along with the first; in its conjunctive sense the word "and" is used to conjoin words, clauses or sentences, expressing the relation of addition or connection, and signifying that something is to follow in addition to that which

proceeds, and its use implies that the connected elements must be grammatically coordinate, as where the elements preceding and succeeding the word "and" refer to the same subject matter. *Black's Law Dictionary* 79 (5th ed.1979).[7]

In addition to the fact that the Callaghan letter clearly uses the word "and" in its normal conjunctive sense, the Department of Energy has never claimed that it had modified the Callaghan letter to require only the second condition, the "possible effect on the deleted area" condition. Instead, the Department of Energy has asserted that both conditions of that letter have been satisfied, and the Reclamation Board of Review and the circuit court have agreed with that assertion. Due to the total absence of any revegetation, this Court concludes that the Department of Energy's assertion is clearly erroneous.[8]

Accordingly, we hold that where consideration of the reinstatement of an area deleted from a surface-mining permit is conditioned upon (1) completion of mining and reclamation on a significant portion of the approved area and upon (2) a further determination of the possible effect of mining on the deleted area, there must be compliance with both of these conditions, including revegetation, prior to reinstatement, unless the permit conditions are modified in accordance with the statute.

Pursuant to *W.Va.Code,* 22–4–3(g) [1985], the appellants are entitled, in our opinion, to recover reasonable attorney's fees and other reasonable costs and expenses, upon itemization and in an amount to be approved by the circuit court upon remand.[9]

---

7. Occasionally "and" is construed as "or" and *vice versa,* whenever such conversion is clearly necessary to effectuate the overall intent. Syl. pt. 20, *Carper v. Kanawha Banking & Trust Co.,* 157 W.Va. 477, 207 S.E.2d 897 (1974).

8. *W.Va.Code,* 22A–3–19(c) [1985, 1988] speaks to modification of a surface-mining permit by the Department of Energy:

(c) The commissioner [of the Department of Energy] shall review outstanding permits of a five-year term before the end of the third year of the permit. Other permits shall be reviewed within the time established by regulations. The commissioner may require rea-

sonable revision or modification of the permit following review: Provided, That such revision or modification shall be based upon written findings and shall be preceded by notice to the permittee of an opportunity for hearing.

9. *W.Va.Code,* 22–4–3(g) [1985] provides:

(g) Whenever an order is issued under this section, or as a result of any administrative or judicial proceeding under this article, at the request of any person, a sum equal to the aggregate amount of all costs and expenses, including attorney fees, as determined by the board or the court to have been reasonably

The final order of the circuit court is consequently reversed, and this case is remanded to the circuit court for approval of the amount to be recovered for reasonable attorney's fees and other costs and expenses.

Reversed and Remanded.

incurred by such person for or in connection with his participation in the proceedings, may be assessed against either party by the board or the court.