# CHARLESTON.

PATRICK M. HOGE *v.* ANTOINETTE BLAIR *et al.*

(No. 6058)

Submitted January 17, 1928.    Decided January 24, 1928)

1. EXECUTORS AND ADMINISTRATORS—*In Suit to Subject Lands Descending to Heir to Payment of Ancestor's Debts, Ancestor's Personal Representative is Necessary Party.*

   In a suit to subject lands descended to the heir to the payment of the debts of his ancestor, the personal representative of such ancestor is a necessary party.    (p. 32.)
   (Descent and Distribution, 18 C. J. § 314.)

2. LIMITATION OF ACTIONS—*Defense of Limitations, Interposed by Personal Representative Against Liability for Deceased's Debts, Operates Alike on Personal and Real Assets of Decedent's Estate.*

   The defense of the statute of limitations, when interposed by a personal representative, operates alike upon the personal and real assets of his decedent's estate.    (p. 33.)
   (Executors and Administrators, 24 C. J. § 1923 [Anno].)

3. SAME—*Exceptions in Statutes of Limitation Are Strictly Construed; Legislature's Enumeration of Specific Exceptions to Statutes of Limitations by Implication Excludes All Others.*

   Exceptions in statutes of limitation are strictly construed and the enumeration by the Legislature of specific exceptions by implication excludes all others.    (p. 33.)
   (Limitations of Actions, 37 C. J. § 9.)

4.   SAME—*In Suit on Foreign Government to Recover for Legal Services, Statute of Limitations Held to Continue to Run in Favor of New Parties Until They Were Brought in by Amendment.*

A case in which the general rule that, where new parties are brought in by amendment, the statute of limitations continues to run in their favor until thus made parties, is properly applied.   (p. 34.)

(Limitations of Actions, 37 C. J. § 350.)

5.   ATTORNEY AND CLIENT—*Evidence Held to Support Judgment for Plaintiff, Suing for Attorney's Fee.*

A case where the finding of the circuit court against a defendant for legal services is supported by the evidence. (p. 34.)

(Attorney and Client, 6 C. J. § 350.)

(NOTE:  Parenthetical references by Editors, C. J.—Cyc. Not part of syllabi.)

Appeal from Circuit Court, Marion County.

Suit by Patrick M. Hoge against Antoinette Blair, C. D. Conaway, administrator of Lizzie B. Loller, deceased, and others.   From a decree for plaintiff against defendants named, they appeal.

*Affirmed in part; reversed in part.*

*Clay D. Amos,* for appellants.
*H. H. Rose,* for appellee.

WOODS, JUDGE:

This suit was brought upon a foreign attachment against certain non-residents for the purpose of recovering for legal services rendered over a period of years.   On a former hearing before this Court, a decree in favor of the plaintiff for $6,375.00, with interest, was reversed for want of necessary parties, and the case remanded for further proceedings. *Hoge* v. *Blair*, 87 W. Va. 515.   In accordance with the foregoing opinion (rendered January 25, 1921), the plaintiff, on the 29th day of December, 1921, sued out process against Antoinette Blair, S. W. Loller, J. D. Charlton, administrator of the personal estate of Cecelia Bryan, deceased, Weeden J. Bryan, administrator of the personal estate of Weeden J. Bryan, deceased, and C. D. Conaway, administrator of the per-

sonal estate of Lizzie B. Loller, deceased, to answer a second
amended and supplemental bill in chancery exhibited against
them.  It will be noted that the first two named defendants,
together with Cecelia Bryan (who died pending the suit and
•prior to the former appeal), were the only parties defendant
in the original proceeding.  *Hoge* v. *Blair, supra.*  The second
amended and supplemental bill was duly filed, and demurrers
were interposed in behalf of Antoinette Blair, S. W. Loller,
J. D. Charlton, as administrator of Cecelia Bryan, deceased,
and C. D. Conaway, as administrator of Lizzie B. Loller, de-
ceased, in which the plaintiff joined.  The trial court, in pass-
ing on the several demurrers, dismissed the bill as to S. W.
Loller, as well as to administrator of Cecelia Bryan, on the
ground that neither S. W. Loller nor Cecelia Bryan had such
an interest in the property involved as could descend to their
heirs; but overruled the demurrers in reference to all other
matters.  Answers were filed by C. D. Conaway, as adminis-
trator of Lizzie B. Loller, deceased, and by Antoinette Blair.
An order was entered referring the cause to a commissioner.
Both the plaintiff and defendants filed exceptions to the com-
missioner's report, and the chancellor on the hearing found the
estate of Lizzie B. Loller to be indebted to the plaintiff in the
sum of $6,481.61, and that Antoinette Blair was indebted to
plaintiff in the sum of $3,939.10, and directed a sale of the
attached property, if the same was not paid within thirty
days.  From this decree and the several rulings therein, the
two defendants appealed to this Court.

It appears that Weeden J. Bryan was at one time the owner
of large holdings of coal land in West Virginia—some 500
acres in Marion County.  His business affairs became so in-
volved that, in 1903, he and his wife conveyed the 500-acre
tract to Lizzie B. Loller, their daughter and only child.
Weeden J. Bryan died in 1907.  Lizzie B. Loller continued
to own the property until her death, August 3, 1911.  Shortly
after the latter's death an agreement was entered into by and
between Cecelia Bryan, widow, S. W. Loller, surviving hus-
band of Lizzie B. Loller, and Antoinette Blair, the only child
and heir of Lizzie B. Loller, by which the entire estate of

Weeden J. Bryan and Lizzie B. Loller were divided or partitioned amongst them, and by virtue of which the fee of all the real estate in West Virginia was to be in Antoinette Blair, but the income therefrom was to be enjoyed jointly and equally by the three, and on the death of Cecelia Bryan and S. W. Loller their shares of said income were to pass to and become the property of Antoinette Blair. About the time of the transfer in 1903 Weeden J. Bryan had become involved in a great deal of litigation requiring the advice and services of an attorney. Plaintiff was called in at this time to render legal services; and, according to his bill, his services were sought from time to time, extending to June, 1913. The plaintiff's claim may be divided roughly into three parts: (1) services rendered in the life-time of Weeden J. Bryan, 1902 to 1907; (2) services rendered Lizzie B. Loller, 1907 to August 3, 1911, $6225.00; and (3) services rendered Antoinette Blair, August 3, 1911 to June, 1913, $2,300.00.

The issues center around the sufficiency of (1) the claim against Lizzie B. Loller; and (2) the claim against Antoinette Blair. As the numerous questions relative to the Lizzie B. Loller claim are dependent upon whether or not the same has been barred by the statute of limitations, we will consider first the application of the statute. This question was raised specially by plea and also on the demurrer of the personal representative of Lizzie B. Loller, deceased, to the bill. We held in a former hearing of this case that, on the case there made, such personal representative was a necessary party. *Hoge* v. *Blair, supra.* As a general rule no estate of a decedent can be proceeded against without the presence of the personal representative, and, when his absence appears, it is the duty of the court on its own motion, if not otherwise moved, to stop until the absent party is brought in. *Hitchcox* v. *Hitchcox,* 39 W. Va. 607. The personal representative's decedent, Lizzie B. Loller, died August 3, 1911. She was not a party to the original suit, nor was her estate in any wise made a party thereto until a summons was issued on the last bill filed, on December 29, 1921, more than ten years after her death. The demands sued on being purely legal in their

nature (equity having jurisdiction only by virtue of the attachment and the right to settle decedent estates), advantage of the statute of limitations may be taken by demurrer to the bill. But, as we have said, it is the duty of the personal representative to plead the statute. He has done so. However, the plaintiff argues that, inasmuch as the real estate sought to be charged for his services descended to Antoinette Blair, the fact that she was made a party to the first suit would defeat the statute invoked by the administrator in his answer.

Counsel insist that under such a situation the statute ought not to apply; but no authority is cited to our attention as a basis for varying he unqualified language thereof, and, so far as we can discover, there is none to fit the exact case in hand. Exceptions in statutes of limitations are strictly construed and the enumeration by the legislature of specific exceptions by implication exclude all others. 17 R. C. L. p. 827. We are cited to no decisions of this Court that uphold the contention of the plaintiff. On the contrary, we find that this Court has held that, in a suit to subject lands descended to the heir to the payment of the debts of the ancestor, that the personal representative is a necessary party. *ommerville* v. *ommerville,* 26 W. Va. 479. This is the case made here as contended by the plaintiff. Such defense goes to the defense of both the personal and real assets. *Findley* v. *Cunningham,* 53 W. Va. 1. Such clai mis not a debt owed personally by the heir of the decedent. The heir only has a right to what is left in the estate, is under no obligation to pay the ancestor's debt, and whatever proper claim there may be against the decedent should be satisfied before the heir gets what is left. *Crawford's Admr.* v. *Turner's Admr.,* 58 W. Va. 600. Then, the plaintiff justifies his amendment to the bill bringing in the personal representative of Lizzie B. Loller, under the provisions of Chapter 86, section 7, of the Code. We find that this section requires the personal representative to be made a party. Against his contention stands our prior decision in this case. Why hold that the personal representative was a necessary party to the suit, and reverse for that reason, if the presence of the heir, Antoinette Blair, in the suit, was sufficient

to defeat the running of the statute as to her? We there said: "And what would be the rights and duties of an administrator when so appointed? Would they not be to defend in every way he could the estate of the decedent? We think so." The general rule is well settled that where new parties are brought in by amendment, the statute of limitations continues to run in their favor until thus made parties. The whole system of extinguishing rights or rights of action by reason of delay is really statutory. The great Chancellor Kent, in *Damarest* v. *Wynkoop*, 3 Johns. Ch. 129, said: "The doctrine of any inherent equity creating an exception as to any disability, where the statute of limitations creates none, has long been, and I believe uniformly, exploded." The mere fact that the enforcement of the statute may seemingly produce hardship does not furnish any reason why the courts should ingraft an exception upon it. It is far better that occasionally one should suffer from the enforcement of the statute, than the statute be robbed of its beneficent results as a statute of repose, by a bending of the law out of its manifest scope to avoid a single seeming hardship. But its application here is not open to the criticism that it operates harshly. The decision of this Court on the former appeal was handed down in January, 1921. The statute at that time had not run by eight months. However, for some reason the plaintiff delayed bringing in Mrs. Loller's personal representative by amendment until December, 1921, some four months after the statutory bar had become effective. So, we cannot escape the conclusion, either under the demurrer of the personal representative or his plea, that the statute of limitations had fully run in favor of the defendant Lizzie B. Loller before the commencement of this action and extinguished any liability asserted against her or her estate in this cause. This conclusion renders any decision of other questions raised on this branch of the case unnecessary.

The record here, as that in the former appeal, does not show assumption by the heir, Antoinette Blair, of the liability of her ancestor for the services sued for by the plaintiff. Hence, the remaining question relates to the claim of the plaintiff

against Antoinette Blair personally for services rendered her after the death of her mother in·1911. The handicap imposed upon him by section 23, of Chapter 130, Code, in proving his claim in the other branch of the case is removed. The plaintiff, together with his witnesses, establishes the rendition of legal services to the extent claimed by him against Antoinette Blair. But does he show his employment? Various letters from Antoinette Blair to him are shown in evidence. At the least they all serve to show that the activities of the plaintiff in connection with the protection of her estate were recognized by her and never repudiated. It seems that soon after her mother's death she, together with her grandmother, executed a power of attorney to Weeden J. Bryan, giving him full power and authority to appear for them, and in their name, place and stead to plead, answer and defend certain cases then pending both for and against the min West Virginia. It gave to him ''full power and authority to do any and all things necessary to be done to protect our [their] interests in said ·chancery causes and under said leasehold estates'', etc. It is shown by the plaintiff that he performed the services for which he seeks payment, not only with the knowledge of the attorney in fact, but in most instances at his express direction and request. Neither Antoinette Blair nor the attorney in fact takes the stand to deny this fact. Her counsel insists that, if the services were rendered by the ˙plaintiff, it was a joint claim against Antoinette Blair and her grandmother. By the terms of the agreement referred to in the forefront of this opinion, entered into by Antoinette Blair, her father, L. W. Loller, and her grandmother, Cecelia Bryan, the two latter held life estates in the West Virginia realty, such estates to vest at their deaths in Antoinette Blair. They both are dead. So, Antoinette Blair ultimately received the benefit personally of the legal services of the plaintiff. Such services being rendered by her tacit consent, and under the express direction of her attorney in fact, the fruits whereof went to the estate held now in fee by her, she is in justice and equity and law liable therefor.

Holding these views, we reverse, annul and hold for naught

so much of the decree of May 21, 1927, as decrees to the plaintiff the sum of $6,481.61 against the estate of Lizzie B. Loller, under the plaintiff's "Itemized Statement No. 1", and the satisfaction thereof; and, as so modified, such decree is in all other respects affirmed.

*Reversed in part; affirmed in part.*