575 S.E.2d 130

## In re the Marriage of Cathy M. KIRWAN, Petitioner Below, Appellee,

v.

## Stephen M. KIRWAN, Respondent Below, Appellant

No. 30513.

Supreme Court of Appeals of West Virginia.

Submitted Oct. 8, 2002.

Filed Nov. 7, 2002.

Michael A. Woelfel, Huntington, for the Appellee.

J. William St. Clair, St. Clair & Levine, Huntington, for the Appellant.

ALBRIGHT, Justice.

In this case the respondent below, Stephen M. Kirwan (hereinafter "Mr. Kirwan" or "Appellant"), appeals the October 11, 2001, child support modification order of the Circuit Court of Cabell County. Mr. Kirwan contends that the circuit court misinterpreted the provisions of West Virginia Code § 48–1–228(b)(6) (2001) (Repl.Vol.2001) by determining that the applicable period for calculating overtime compensation in the context of a child support modification proceeding is the thirty-six months preceding the filing of the petition for modification. Based upon our review of the record and briefs in this case, we affirm the circuit court's decision.

## I.  Factual and Procedural Background

Stephen Kirwan and Cathy Kirwan (hereinafter "Ms. Kirwan" or "Appellee") were divorced on June 10, 1997, by order of the Cabell County Circuit Court. They are the parents of three daughters, all of whom under the terms of the divorce order were placed in the custody of their mother. As part of this custody arrangement, Mr. Kirwan agreed to pay child support in the amount of $750 per month, which was in excess of the child support guidelines.

When the oldest daughter reached the age of eighteen and the middle daughter chose to live with her father, Mr. Kirwan petitioned the court to modify his child support obligation based on change in circumstances.[1] On July 5, 2001, the family law master[2]

---

**1.**  *See* W.Va.Code § 48–11–105 (2001) (Repl.Vol. 2001) (modification of child support orders).

**2.**  The family law master system ceased to operate on January 1, 2002, and was replaced by a system of family court judges. *See* W.Va.Code

conducted a hearing on the petition for modification. During the hearing, the parties agreed to the applicable child support guideline factors but disagreed on the proper calculation of the overtime compensation to be included in Mr. Kirwan's gross income: Mr. Kirwan requested that the law master only consider the amount of overtime compensation he earned prior to the couple's separation in 1996; Ms. Kirwan requested that all overtime compensation earned by Mr. Kirwan in the thirty-six-month period preceding the filing of the petition for modification be considered.[3] The family law master followed neither suggestion but instead computed the overtime Mr. Kirwan worked during the thirty-six-month period prior to the couple's separation to arrive at the monthly overtime average of 54.86 hours. Factoring this overtime average into the support formula, the law master arrived at the recommendation that Mr. Kirwan's modified child support obligation be $390.49. Ms. Kirwan filed an exception to this recommendation with the circuit court.

By order entered October 11, 2001, the circuit court affirmed all conclusions and recommendations of the law master but for the overtime issue. With regard to overtime, the circuit court essentially found that Mr. Kirwan had established a pattern of working overtime during the marriage and that this practice continued, albeit at an increased rate, after the marriage was dissolved. Upon this basis and according to the terms of the statute defining gross income for child support purposes, the circuit court concluded that "the Family Law Master should have included in her calculations of gross income the amount of overtime worked by Respondent during the thirty-six hours [sic] preced-

ing the petition for modification[.]" Subsequently, the case was remanded to the law master, who recalculated the amount of child support in accordance with the circuit court's order.[4] Thereafter, Mr. Kirwan filed this appeal.

## II. Standard of Review

■ The matter presented for our determination in this case concerns a question of statutory construction, for which our review is plenary. This is in keeping with our holding in syllabus point one of *Chrystal R.M. v. Charlie A.L.*, 194 W.Va. 138, 459 S.E.2d 415 (1995): "Where the issue on an appeal from the circuit court is clearly a question of law or involving an interpretation of a statute, we apply a *de novo* standard of review." *Id.* at 139, 459 S.E.2d at 416. With this standard in mind, we proceed with our examination of the issue raised.

## III. Discussion

At the heart of the issue presented in this case is the language of West Virginia Code § 48-1-228 (2001) (Repl.Vol.2001),[5] which states in pertinent part:

(a) "Gross income" means all earned and unearned income.... When determining whether an income source should be included in the child support calculation, the court shall consider the income source if it would have been available to pay child-rearing expenses had the family remained intact....

(b) "Gross income" includes, but is not limited to, the following:

. . . .

(6) An amount equal to fifty percent of the average compensation paid for person-

---

§ 51-2A-23 (2000) (Supp.2002). The proceedings in this case all occurred under the family law master system.

**3.** Evidence submitted at the hearing demonstrated that: (1) prior to the separation of the parties, Mr. Kirwan averaged 49.87 hours of overtime per month during 1996; (2) Mr. Kirwan worked more overtime after the separation with the average of overtime worked in the first half of 2001 totaling 148.8 hours per month.

**4.** Upon recalculation, the monthly child support obligation increased to $499.30 per month.

**5.** The Legislature recodified the majority of West Virginia domestic relations laws in 2001. No change, substantive or otherwise, was made in the provisions of West Virginia Code § 48-1-228, formerly codified at West Virginia Code § 48A-1A-19, at issue in this case. *See* W.Va.Code § 48-1-102 (2001) (Repl.Vol.2001) (general legislative intent to maintain substantive statutory provisions of domestic relations laws recodified in 2001).

al services as overtime compensation during the preceding thirty-six months: Provided, That overtime compensation may be excluded from gross income if the parent with the overtime income demonstrates to the court that the overtime work is voluntarily performed and that he or she did not have a previous pattern of working overtime hours prior to separation or the birth of a nonmarital child.

■ In essence, Appellant's argument is that the lower court's reading of West Virginia Code § 48–1–228(b)(6) failed to give effect to the proviso. According to Appellant's argument, the terms of this proviso preclude consideration of any overtime compensation other than the pattern established prior to separation. In support of this construction of the statutory language, Mr. Kirwan cites *Cogar v. Faerber*, 179 W.Va. 600, 371 S.E.2d 321 (1988), in which we said in syllabus point four that " '[i]n ascertaining legislative intent, effect must be given to each part of the statute and to the statute as a whole so as to accomplish the general purpose of the legislation.' Syl. Pt. 1, *Smith v. State Workmen's Compensation Commissioner*, 159 W.Va. 108, 219 S.E.2d 361 (1975)."

In response to this argument, Appellee maintains that the circuit court correctly determined that the statute in question need not be construed. Appellee further contends that the plain and literal meaning of the statutory provision in question is that the pattern of overtime worked before parties separate only serves as the basis for including overtime compensation in gross income and does not permanently fix the amount of overtime compensation to a pre-divorce earnings pattern. Appellee asserts that any other reading of the statute would be in derogation of West Virginia Code § 48–13–102 (2001) (Repl.Vol.2001) in which the Legislature clearly states that public policy dictates that children share in the standard of living of their parents regardless of the marital status of the parents.[6]

■ It is well-established that "[a] statutory provision which is clear and unambiguous and plainly expresses the legislative intent will not be interpreted by the courts but will be given full force and effect." Syl. Pt. 2, *State v. Epperly*, 135 W.Va. 877, 65 S.E.2d 488 (1951). *Accord* Syl. Pt. 2, *State v. Elder*, 152 W.Va. 571, 165 S.E.2d 108 (1968) (rules of construction may not be applied to change the plain and unambiguous meaning of a statute); Syl. Pt. 4, in part, *Daily Gazette Co., Inc. v. West Virginia Dev. Office*, 206 W.Va. 51, 521 S.E.2d 543 (1999) ("A statutory provision which is clear and unambiguous and plainly expresses the legislative intent will not be interpreted by the courts but will be given full force and effect." (Internal quotations and citations omitted)). Our close examination of West Virginia Code § 48–1–228(b)(6) does not reveal ambiguity. The statute clearly states that the overtime compensation to be included in the calculation of gross income is fifty percent of the average overtime remuneration "during the preceding thirty-six months." *Id.* The only reference to the previous pattern of working overtime prior to separation is contained in the exception to the general application of the statute, that is, when overtime compensation may be excluded from the tabulation of gross income. Appellant did not invoke the operation of the exclusionary provision, nor could he have in light of the fact that he indeed had a pattern of working some amount of overtime prior to the separation of the parties.

We believe that the policy the Legislature expressed in West Virginia Code § 48–13–102, that children have a right to share in

---

6. The text of West Virginia Code § 48–13–102 states:

The Legislature recognizes that children have a right to share in their natural parents' level of living. Expenditures in families are not made in accordance with subsistence level standards, but are made in proportion to household income, and as parental incomes increase or decrease, the actual dollar expenditures for children also increase or decrease correspondingly. In order to ensure that children properly share in their parents' resources, regardless of family structure, these guidelines are structured so as to provide that after a consideration of respective parental incomes, child support will be related, to the extent practicable, to the standard of living that children would enjoy if they were living in a household with both parents present.

**524**

their natural parents' level of living, which may increase or decrease as parental income increases or decreases, confirms our conclusion that the proviso in West Virginia Code § 48–1–228(b)(6) is limited to its plain meaning and ought not be extended indirectly and by judicial fiat to cases and circumstances not expressly addressed by it.[7]

■ Consequently, we are compelled to agree with the position adopted by the circuit court and advocated by Appellee. We hold that overtime compensation included in child support gross income calculations under West Virginia Code § 48–1–228(b)(6) is fifty percent of such compensation earned during the thirty-six months preceding the calculation. Our agreement with the circuit court's uniform approach to handling this procedural matter includes finding that the beginning of this thirty-six-month period in child support modification proceedings is the date the petition for modification is filed.[8]

Accordingly, we find that the circuit court correctly applied the relevant statute in arriving at its judgment that the proper calculation of overtime earnings in a child support modification proceeding is one half of the overtime compensation earned during the thirty-six months preceding the filing of a petition for modification. Therefore, we hereby affirm the October 11, 2001, child support modification order of the Circuit Court of Cabell County.

Affirmed.

---

7. Our conclusion in this regard is further supported by contemplating the reverse factual situation where income from overtime prior to separation is substantially greater than that achievable at a later date.

8. We take favorable notice of the practice of calculating the thirty-six-month period from the date of separation that is followed by the courts when initially determining child support awards involving overtime compensation pursuant to West Virginia Code § 48–1–228(b)(6).