648 S.E.2d 620

**Michael WORLEY and Cynthia Worley, His Wife, Plaintiffs Below, Appellants**

v.

**BECKLEY MECHANICAL, INC., et al., Defendants Below, Appellees.**

**No. 33190.**

Supreme Court of Appeals of West Virginia.

Submitted: March 13, 2007.

Decided: May 17, 2007.

Concurring Opinion of Justice Davis June 22, 2007.

Concurring Opinion of Justice Starcher June 12, 2007.

Dissenting Opinion of Justice Benjamin July 27, 2007.

Guy R. Bucci, Esq., Bucci Bailey & Javins, LC, Charleston, Pamela A. Lambert, Esq., Pamela A. Lambert & Associates, Gilbert, for Michael and Cynthia Worley.

Kermit J. Moore, Esq., Brewster, Morhous, Cameron, Mullins, Caruth, Moore, Kersey & Stafford, PLLC, Bluefield, for Beckley Mechanical, Inc.

Christopher A. Brumley, Esq., Nathaniel K. Tawney, Esq., Shannon N. Akers, Esq., Flaherty Sensabaugh & Bonasso, PLLC, Charleston, for West Virginia Sprinkler, Inc.

Justin C. Taylor, Esq., Bailey & Wyant, PLLC, Charleston, for Riddleberger Brothers, Inc.

Scott L. Summers, Esq., Robert H. Akers, Esq., Offut, Fisher & Nord, Charleston, for Nielsen Builders, Inc. and Klockner Pentaplast of America, Inc.

MAYNARD, Justice.

The Appellants, Michael and Cynthia Worley, appeal the December 13, 2005, order of the Circuit Court of Raleigh County that dismissed with prejudice their complaint based on the court's finding that the complaint was not filed within the applicable statute of limitations. For the reasons set forth below, we reverse the circuit court's order and remand for further proceedings consistent with this opinion.

## I.

### FACTS

On the morning of Sunday, May 28, 2000, Michael Worley, Appellant and Plaintiff below, was working as a pipe fitter for Appellees, Beckley Mechanical, Inc., and West Virginia Sprinkler, Inc., on a construction project. Mr. Worley was rotating a valve when the valve exploded under pressure. The valve forcefully struck Mr. Worley in the abdomen, knocking him off a scissor lift and onto the concrete floor approximately thirty feet below.

Mr. Worley was transported by ambulance to Raleigh General Hospital where he remained hospitalized until July 10, 2000.[1] The

---

1. Upon his release from the hospital, Mr. Worley entered a rehabilitation facility where he re-    mained a short time.

evidence shows that Mr. Worley suffered no brain trauma from the accident. Several days after Mr. Worley's admission to the hospital, he experienced medical complications including an infected central venous line and a perforated liver incurred during the insertion of a chest tube. As a result, he developed sepsis and became seriously ill. Subsequently, Mr. Worley's level of mental functioning varied for significant periods of his hospitalization.

On July 10, 2002, Mr. Worley and his wife filed their complaint in which they alleged various theories of recovery against the Appellees including Beckley Mechanical, Inc., West Virginia Sprinkler, Inc.,[2] Klockner Pentaplast of America, Inc., Riddle Brothers, Inc., and Nielsen Builders, Inc. The complaint also included a loss of consortium claim by Mrs. Worley. The filing of the complaint was approximately six weeks beyond the two-year statute of limitations.

The Appellees subsequently filed motions to dismiss the complaint for a number of reasons including that the complaint was not timely filed. The circuit court converted the motions to dismiss into motions for summary judgment and denied the motions on the basis that a question of fact existed as to whether Mr. Worley had suffered a disability that tolled the statute of limitations. The court ultimately held a bench trial on the specific question of whether Mr. Worley was "insane" so as to toll the running of the statute of limitations pursuant to W.Va.Code § 55–2–15 (1923), which provides:

> If any person to whom the right accrues to bring any such personal action, suit or scire facias, or any such bill to repeal a grant, shall be, at the time the same accrues, an infant or insane, the same may be brought within the like number of years after his becoming of full age or sane that is allowed to a person having no such impediment to bring the same after the right accrues, or after such acknowledgment as is mentioned in section eight [§ 55–2–8] of this article, except that it shall in no case be brought after twenty

years from the time when the right accrues.

■ After hearing the evidence and considering the arguments of the parties, the circuit court ruled that Mr. Worley was not "insane" at the time the cause of action accrued so as to toll the statute of limitations. Specifically, the court reasoned:

> It must be noted, however, that the running of the statute of limitations is suspended if he is insane **"at the time the [cause of action] accrues."** . . .
>
> The statute does not provide for the situation where a person is sane at the moment the cause of action accrues but becomes insane afterward. The sole question presented by the statue (sic) is whether he was insane at the time the cause of action accrues. The evidence supports the conclusion that he was sane at that moment, and that he continued to be sane for a few days thereafter. The evidence would present more difficulty if the question is whether he was insane on any given day following the date that the cause of action accrued. There may have been days that he was and days that he was not. But the statute does not work that way, and so that is not the question.
>
> There is no claim that the Plaintiff was insane immediately prior to or at the time of the injury. This question of fact focuses on the time immediately following the injury. It is Plaintiff's contention that he was instantly rendered insane by the injury, and that he did not recover from that insanity, for the purposes of the statute of limitation, until his discharge from the hospital on July 10, 2000. If he was instantly rendered insane by the injury, the onset of insanity would be simultaneous with the injurious event. . . .
>
> In the present matter, however, it is the court's finding of fact, upon the evidence summarized herein, that the Plaintiff was not insane at the moment of injury, nor was he instantly rendered insane by the injury, nor did he become insane immediately thereafter. (Emphasis in original).

**2.** Mr. Worley alleged a deliberate intent cause of action against his employers, Beckley Mechani-

cal, Inc., and West Virginia Sprinkler, Inc., pursuant to W.Va.Code § 23–4–2(2).

Because the circuit court found that the Appellant was not under a disability that tolled the statute of limitations, the court dismissed the Appellants' complaint as untimely filed. The Appellants now appeal that ruling.[3]

## II.

## STANDARD OF REVIEW

In this case, we are asked to review findings of fact and conclusions of law made by the circuit court after a bench trial. This Court has held,

> In reviewing challenges to the findings and conclusions of the circuit court made after a bench trial, a two-pronged deferential standard of review is applied. The final order and the ultimate disposition are reviewed under an abuse of discretion standard, and the circuit court's underlying factual findings are reviewed under a clearly erroneous standard. Questions of law are subject to a *de novo* review.

Syllabus Point 1, *Public Citizen, Inc. v. First Nat. Bank*, 198 W.Va. 329, 480 S.E.2d 538 (1996).

## III.

## DISCUSSION

The primary issue in this case is whether, under W.Va.Code § 55–2–15, mental illness[4] must occur at the same time the cause of action accrues in order to toll the commencement of the running of the statute of limitations.[5] The Appellants assert that the circuit court erred in construing W.Va. Code § 55–2–15 to require that the appellant be mentally ill at the same time that his cause of action accrues in order to toll the statute of limitations. The Appellees counter that the circuit court properly applied the statute according to its plain and unambiguous terms.

When determining the meaning of statutory language, this Court is mindful that "[w]here the language of a statute is clear and without ambiguity the plain meaning is to be accepted without resorting to the rules of interpretation." Syllabus Point 2, *State v. Elder*, 152 W.Va. 571, 165 S.E.2d 108 (1968). The pertinent language of the statute at issue provides that "[i]f any person to whom the right accrues to bring any such personal action ... shall be, at the time the same accrues ... insane, the same may be brought within the like number of years after his becoming ... sane that is allowed to a person having no such impediment to bring the same after the right accrues." Generally, "the right to bring an action for personal

---

**3.** In determining whether Mr. Worley was "insane" for purposes of W.Va.Code § 55–2–15, the circuit court correctly looked to W.Va.Code § 2–2–10(n) (1998) which indicates that "[t]he words 'insane person' include everyone who has mental illness as defined in section two [§ 27–1–2], article one, chapter twenty-seven of this code[.]" According to W.Va.Code § 27–1–2 (1974), "'Mental illness' means a manifestation in a person of significantly impaired capacity to maintain acceptable levels of functioning in the areas of intellect, emotion and physical well-being." This Court has previously recognized that the definition of "insane person" in W.Va. Code § 2–2–10(n) applies to W.Va.Code § 55–2–15. *See Albright v. White*, 202 W.Va. 292, 301 fn. 14, 503 S.E.2d 860, 869 fn. 14 (1998).

There is also a discussion of the meaning of the term "insanity" used in W.Va.Code § 55–2–15 in the case of *Cobb v. Nizami*, 851 F.2d 730, 732 (4th Cir.1988). In *Cobb*, the court stated,

> Although there has been no definitive interpretation of § 55–2–15 by the West Virginia Supreme Court of Appeals, the term "insane" as used in similar statutes has been held by other courts to mean "such a condition of mental derangement as actually to bar the

sufferer from comprehending rights which he is otherwise bound to know." *Williams v. Westbrook Psychiatric Hospital*, 420 F.Supp. 322, 325 (E.D.Va.1976). Stated another way, "'insane' or of 'unsound mind' ... means a condition of mental derangement which renders the sufferer incapable of caring for his property, of transacting business, of understanding the nature and effect of his acts, and of comprehending his legal rights and liabilities." *Goewey v. United States*, 612 F.2d 539, 544, 222 Ct.Cl. 104 (1979). (Ellipses in original).

**4.** Because an "insane" person under W.Va.Code § 55–2–15 means the same as a mentally ill person, as provided for in W.Va.Code § 2–2–10(n), we will substitute the term "mentally ill" for "insane" in our discussion.

**5.** The Appellants also claim that the circuit court erred as a matter of law in imposing a higher burden on the Appellants than simply showing that Mr. Worley had a "mental illness" pursuant to W.Va.Code § 27–1–2. Our review of the record indicates that this assignment of error lacks merit.

injuries accrues ... when the injury is inflicted." Syllabus Point 1, in part, *Jones v. Trustees of Bethany College,* 177 W.Va. 168, 351 S.E.2d 183 (1986). The plain meaning of the statutory language is that for mental illness to toll the statute of limitations, the mental illness must occur at the same time the person is injured. In other words, the person must have been mentally ill when he or she was injured or must have become mentally ill simultaneously with the injury. The circuit court's literal application of this language to the instant facts led it to conclude that because Mr. Worley did not become mentally ill until a few days after his injury, his mental illness did not toll the statute of limitations. As a result, the two-year statute of limitations began to run on the date of injury which was May 28, 2000.

However, it is also true that,

"[t]he plain meaning of a statute is normally controlling, except in the rare case in which literal application of a statute will produce a result demonstrably at odds with the intentions of the drafters. In such case, it is the legislative intent, rather than the strict language, that controls. *West Virginia Human Rights Comm'n v. Garretson,* 196 W.Va. 118, 128, 468 S.E.2d 733, 743 (1996)." *Keatley v. Mercer County Bd. of Educ.,* 200 W.Va. 487, 492 n. 7, 490 S.E.2d 306, 311 n. 7 (1997).

*Fitzgerald v. Fitzgerald,* 219 W.Va. 774, 784, 639 S.E.2d 866, 876 (2006). After carefully weighing the policy of W.Va.Code § 55–2–15 in conjunction with a literal application of its language, we find that the legislative intent in drafting the statute should control. The general purpose of W.Va.Code § 55–2–15 (1923) is to toll the commencement of the running of the statute of limitations so that the legal rights of infants and the mentally ill may be protected. *See Whitlow v. Bd. of Educ. of Kanawha Cty.,* 190 W.Va. 223, 231,

438 S.E.2d 15, 23 (1993) ("The general tolling statute in W.Va.Code, 55–2–15 ... is designed to extend the tolling period so that the rights of infants may be protected."). This purpose would be frustrated if the statute is literally read to protect only those persons who were mentally ill at the time of injury or who became mentally ill at the same time the injury occurred. Such a construction would leave completely unprotected from the running of the statute of limitations those who, because of the defendant's conduct, become mentally ill within minutes, hours, or a few days after the injury. The fact is, however, that in many cases, including the instant one, those who become mentally ill a short time after their causes of action accrued are, as a practical matter, just as incapable of asserting their rights prior to their mental illness as those who were mentally ill or who became mentally ill at the same time their injuries occurred. Such persons are equally in need of the protection afforded by W.Va.Code § 55–2–15. In sum, we find that a strained literal application of the statute's language potentially excludes from protection many persons that the statute was intended to protect.

In his concurring opinion in *Kyle v. Green Acres at Verona, Inc.,* 44 N.J. 100, 207 A.2d 513, 521 (1965), Judge Proctor stated "I think the proper rule should be: If the interval between the tort and the resulting insanity is so brief that plaintiff, acting with diligence, cannot take preliminary steps to enforce his legal rights, then the defendant is estopped from asserting that the statute of limitations has commenced to run."[6] (Citation omitted). Judge Proctor's reasoning is both persuasive and fair and should be the rule in West Virginia. Therefore, we now hold that in order for mental illness to toll the commencement of the running of the statute of limitations pursuant to W.Va.Code § 55–2–15 (1923), the plaintiff must show[7]

---

6. The Appellees, in their brief to this Court, note that a small number of jurisdictions with similar statutory language to W.Va.Code § 55–2–15 recognize a limited exception to the plain statutory language when the injury and mental illness resulting from the injury occur *on the same* day. In such an instance, the two events will be considered legally "simultaneous" and the statute of limitations will not begin to run until sanity is

restored. The reasoning behind such a rule is that courts do not take notice of a fraction of a day. *See Nebola v. Minnesota Iron Co.,* 102 Minn. 89, 112 N.W. 880 (1907). It seems to us, however, that such a rule is arbitrary and fails to take into consideration the actual circumstances of each case.

7. Once the defendant shows that the plaintiff has not filed his or her complaint within the applica-

that the interval between the tortious act and the resulting mental illness was so brief that the plaintiff, acting with diligence, could not reasonably have taken steps to enforce his or her legal rights during such interval. To hold otherwise simply would deny the protection of the law to some of the weakest and most vulnerable people who, because they are unwilling victims of a terrible illness, are temporarily incapable of asserting their rights in court.

■ This Court previously has held that "[t]he ultimate purpose of statutes of limitations is to require the institution of a cause of action within a reasonable time." Syllabus Point 2, *Perdue v. Hess,* 199 W.Va. 299, 484 S.E.2d 182 (1997). By providing meaningful legal protection to the mentally ill, we are confident that our holding follows the intent of the Legislature in drafting the exceptions to the statute of limitations in W.Va.Code § 55-2-15. At the same time, we are equally convinced that our holding is sufficiently narrow to ensure that in cases of mental illness causes of action will be instituted within a reasonable time.

■ Having stated the applicable rule, we now must determine whether it applies to Mr. Worley so as to toll the commencement of the running of the statute of limitations under the facts of this case. The circuit court found that Mr. Worley was sane from May 28, the day of his injury, through June 3. The court based this finding of fact on nursing notes that consistently reported during this time that Mr. Worley was "alert, oriented, and cooperative." We find that the circuit court did not err in finding that Mr. Worley was sane on May 28 and May 29. However, we find clear error in the court's finding that Mr. Worley remained sane from May 29 through June 3.

This Court's review of the evidence presented below indicates that Dr. Russell I. Voltin, the Appellees' expert, testified that while there is no objective evidence of mental illness on May 28 and May 29, "[f]rom … May 30th through June 28th, it is likely that [Mr. Worley] was experiencing significant sequelae from his fall that would have impacted on his ability to appreciate his situation." On cross-examination, Dr. Voltin reiterated his position that on May 30, Mr. Worley was "at least of significantly impaired capacity to maintain acceptable levels of functioning in areas of intellect, emotion, and physical well-being." Based on this credible evidence of record, we find that Mr. Worley's mental illness began approximately on May 30 rather than on June 3.

Thus, we find from the evidence that Mr. Worley was sane on May 28, the day of his injury, and the following day. If we discount the day of injury, which was a Sunday, as a day on which Mr. Worley could have asserted his legal rights, we are left with May 29. The evidence reveals that on May 29, Mr. Worley was in pain and being treated with morphine. Due to these circumstances, we believe that it would be unreasonable to expect Mr. Worley to initiate the enforcement of his legal rights on May 29. As noted above, Mr. Worley's mental condition began to deteriorate on May 30. Therefore, we conclude from the evidence that the interval between Mr. Worley's injury and the resulting mental incompetence was so brief that Mr. Worley could not reasonably have taken steps to enforce his legal rights during that period. Accordingly, we find that the circuit court erred in finding that Mr. Worley's mental illness did not toll the commencement of the statute of limitations.

In its memorandum order, the circuit court found that Mr. Worley's level of mental functioning continually changed during his course of treatment between June 4, 2000, and his release from the hospital on July 10, 2000. However, the court did not make a finding as to when Mr. Worley became "sane" under W.Va.Code § 55-2-15. The statute provides that the statute of limitations commences to run after the "insane" person becomes "sane." Therefore, it is necessary to remand this case to the circuit court for a determination of when Mr. Worley became sane. Once

ble statute of limitations, the plaintiff has the burden of showing an exception to the statute. *See* Syllabus Point 3, in part, *Cart v. Marcum,* 188 W.Va. 241, 423 S.E.2d 644 (1992) ("[T]he 'discovery rule' applies only when there is a strong showing by the plaintiff that some action by the defendant prevented the plaintiff from knowing of the wrong at the time of the injury.").

the circuit court makes this finding, it can then make the ultimate determination whether the Appellants filed their complaint within two years of the time that Mr. Worley regained his sanity.

## IV.

## CONCLUSION

For the reasons stated above, the December 13, 2005, order of the Circuit Court of Raleigh County that dismissed as untimely the Appellants' complaint is reversed, and this case is remanded to the circuit court for further proceedings consistent with this opinion.

Reversed and remanded.

DAVIS, C.J., concurring.

In this case, the majority correctly has held that the commencement of the statutory limitations period within which a plaintiff is required to bring his/her cause of action is tolled when that plaintiff is mentally infirm or suffers from a mental illness. *See* W. Va.Code § 55-2-15 (1923) (Repl.Vol.2000). I write separately to demonstrate that the majority's opinion has not strayed from our prior precedent directing us to strictly construe statutes of limitation and the legislatively-created exceptions thereto.

We long have held that "[e]xceptions in statutes of limitation are strictly construed and the enumeration by the Legislature of specific exceptions by implication excludes all others." Syl. pt. 3, *Hoge v. Blair*, 105 W.Va. 29, 141 S.E. 444 (1928). The general statute of limitations, set forth in W. Va.Code § 55-2-12 (1959) (Repl.Vol.2000), requires that "[e]very personal action for which no limitation is otherwise prescribed shall be brought ... within two years next after the right to bring the same shall have accrued if it be for damages for personal injuries[.]" W. Va. Code § 55-2-12(b). At issue in the case *sub judice*, however, is the language of W. Va. Code § 55-2-15, which provides a statutory exception to the general statute of limitations, W. Va.Code § 55-2-12.[1] As it applies

to the instant proceeding, the provisions of W. Va.Code § 55-2-15 permit that

> [i]f any person to whom the right accrues to bring any such personal action ... shall be, at the time the same accrues, ... insane, the same may be brought within the like number of years after his becoming ... sane that is allowed to a person having no such impediment to bring the same after the right accrues ..., except that it shall in no case be brought after twenty years from the time when the right accrues.

In explaining how mental illness tolls the commencement of the statute of limitations in accordance with W. Va.Code § 55-2-15, the majority has not created a new exception to the general statute of limitations or created a mechanism by which the statute of limitations is started, stopped, and restarted again. Rather, the Court has merely clarified how the tolling mechanism of W. Va. Code § 55-2-15 operates when the plaintiff has a mental illness. This delayed start or commencement of the statute of limitations is consistent with our longstanding recognition that, "[a]fter the statute of limitations has commenced to run, no subsequent disability will interrupt it." Syl. pt. 2, *Mynes v. Mynes*, 47 W.Va. 681, 35 S.E. 935 (1900). In this case, the severity of Mr. Worley's work-related injuries necessitated the administration of medications that compromised his mental acuity. Such medications were administered to Mr. Worley shortly after he was admitted to the hospital following his accident, and continued to be given to him until his injuries progressively worsened and his mental functioning deteriorated a few days later. Given these circumstances, it is clear that Mr. Worley was not competent during this time, and thus, the statute of limitations should not have begun to run, pursuant to the tolling mechanism of W. Va.Code § 55-2-15, until after he had regained his competency.

The standard by which this Court has been guided in its jurisprudence is a recognition that "[t]he ultimate purpose of statutes of limitations is to require the institution of a

1. See generally *Perdue v. Hess*, 199 W.Va. 299, 303 n. 7, 484 S.E.2d 182, 186 n. 7 (1997), for a discussion of other legislatively-created exceptions to the general statute of limitations.

cause of action within a reasonable time." Syl. pt. 2, *Perdue v. Hess,* 199 W.Va. 299, 484 S.E.2d 182 (1997). Application of the tolling mechanism of W. Va.Code § 55–2–15 to the facts of this case ensures the timely institution of the Worleys' cause of action. Because the majority correctly stated the law and properly applied it to the facts of this case, I concur.

STARCHER, J., concurring.

I concur with the result reached by the majority opinion, reversing the dismissal of the plaintiff's complaint. I write separately because I am inclined to take a somewhat different approach to the issues raised in the instant case.

First, as the majority opinion ably discusses, scientific and public understanding of brain disorders has hugely improved since the time when the statute in question, *W.Va. Code,* 55–2–15 [1923] was enacted.

Moreover, our ability to ameliorate these disorders has improved as well. Today, many people with severe mental illnesses are not "insane" for all times. Rather, the severe and acute disabling symptoms of many brain disorders can be abated with medical treatment. (And the symptoms can also recur, of course.) Today's law must recognize this fundamental fact.

Second, *W.Va.Code,* 55–2–15 (1923), read literally, *only* applies in instances when a person is "insane"—i.e., severely disabled by a brain disorder—*at the time that their right to bring a suit accrues.* The statute *by its own terms* has no applicability to the facts of the instant case—where the plaintiff's right accrued *before* he became "insane."

However, in the interest of fairness, the majority opinion looks to what the statute "intends," even if that intention contradicts the statute's literal meaning. I do not quarrel with taking such an approach—in order to apply a statute that was created in earlier times to modern realities. For a good discussion of how courts do this all the time, *see* Calabresi, Guido, "A Common Law for the Age of Statutes," Harvard University Press 1982.

But there is another way that such fairness could be reached in the instant case (and in future cases), without contradicting the statute's clear meaning. This Court could simply hold that the running of the statute of limitations *may* be equitably tolled or suspended during the period of a plaintiff's "insanity."

This approach might, in some cases, result in greater fairness than the approach of the majority opinion. Under the majority opinion's approach, a party who is injured might be seen as required to have *almost immediately* filed suit to avoid a possible legal bar to his claim—if a mental illness should later render him incapable of taking action within the statute of limitations. This would not be prudent or fair. We should not be in a position of pushing people to file lawsuits quickly; nor should we sanction unfairness against people with disabilities.

The law is not so obsessed with statutes of limitation as to preclude equitably tolling statutes of limitation in some cases of temporary disability. After all, an injured twelve-year-old has *six years* to file a tort action, and the law finds no problem in subjecting a defendant to such a potential delay in a claim being brought.

Therefore, I suggest that a court could, for good cause shown and in accord with equitable principles, extend a statute of limitations to exclude periods of "insanity"—rather than impose an up-front duty to file a lawsuit while one is still sane or risk being forever barred from suit.

As I read the majority opinion, it does not preclude such an equitable tolling. I think a trial court that had good grounds for such a holding would find support on appeal, for the "fairness" reasons that underlie the majority opinion.

Consequently, I concur.

BENJAMIN, Justice, dissenting.

Despite this Court's repeated admonitions that it should not sit as a superlegislature, re-writing statutes under the guise of statutory interpretation, that is exactly what the Majority has done in this matter. In *Subcarrier Communications, Inc. v. Nield,* 218

W.Va. 292, 624 S.E.2d 729 (2005), this Court recently recognized:

" '[I]t is not for [courts] arbitrarily to read into [a statute] that which it does not say. Just as courts are not to eliminate through judicial interpretation words that were purposely included, *we are obliged not to add to statutes something the Legislature purposely omitted.*' *Banker v. Banker,* 196 W.Va. 535, 546–47, 474 S.E.2d 465, 476–77 (1996) (citing *Bullman v. D & R Lumber Company,* 195 W.Va. 129, 464 S.E.2d 771 (1995); *Donley v. Bracken,* 192 W.Va. 383, 452 S.E.2d 699 (1994)). ([E]mphasis added). *See State ex rel. Frazier v. Meadows,* 193 W.Va. 20, 24, 454 S.E.2d 65, 69 (1994). Moreover, '[a] statute, or an administrative rule, may not, under the guise of "interpretation," be modified, revised, amended or rewritten.' Syl. pt. 1, *Consumer Advocate Division v. Public Service Commission,* 182 W.Va. 152, 386 S.E.2d 650 (1989). *See Sowa v. Huffman,* 191 W.Va. 105, 111, 443 S.E.2d 262, 268 (1994)." *Williamson-v. Greene,* 200 W.Va. 421, 426–27, 490 S.E.2d 23, 28–29 (1997).

*Subcarrier Communications,* 218 W.Va. at 299, 624 S.E.2d at 736, quoting, *Longwell v. Board of Educ. of County of Marshall,* 213 W.Va. 486, 491, 583 S.E.2d 109, 114 (2003). The Court continued, in footnote 10, by stating:

Likewise, " '[T]he judiciary may not sit as a superlegislature to judge the wisdom or desirability of legislative policy determinations made in areas that neither affect fundamental rights nor proceed along suspect lines.' " *State ex rel. Blankenship v. Richardson,* 196 W.Va. 726, 735, 474 S.E.2d 906, 915 (1996) (quoting *Lewis v. Canaan Valley Resorts, Inc.,* 185 W.Va. 684, 692, 408 S.E.2d 634, 642 (1991)). Indeed, " '[i]t is not the province of the courts to make or supervise legislation, and a statute may not, under the guise of interpretation, be modified, revised, amended, distorted, remodeled, or rewritten[.]' " *State v. Richards,* 206 W.Va. 573, 577, 526 S.E.2d 539, 543 (1999) (quoting *State v. General Daniel Morgan Post No. 548,* 144 W.Va. 137, 145, 107 S.E.2d 353, 358 (1959)).

*Subcarrier Communications,* 218 W.Va. at 299, n. 10, 624 S.E.2d at 736, n. 10. *Accord, Lucas v. Fairbanks Capital Corp.,* 217 W.Va. 479, 484, 618 S.E.2d 488, 493 (2005); *State ex rel. Orlofske v. City of Wheeling,* 212 W.Va. 538, 546–7, 575 S.E.2d 148, 156–7 (2002).

The statute at issue herein, W. Va.Code § 55–2–15 (1923), clearly and unambiguously provides:

If any person to whom the right accrues to bring any such personal action, suit or scire facias, or any such bill to repeal a grant, *shall be at the time the same accrues, an infant or insane,* the same may be brought within the like number of years after his becoming of full age or sane that is allowed to a person having no such impediment to bring the same after the right accrues, or after such acknowledgment as is mentioned in section eight [§ 55–2–8] of this article, except that it shall in no case be brought after twenty years from the time when the right accrues.

(Emphasis added.) "Where the language of a statute is clear and without ambiguity the plain meaning is to be accepted without resorting to the rules of interpretation." Syl. Pt. 2, *State v. Elder,* 152 W.Va. 571, 165 S.E.2d 108 (1968). Thus, " '[a] statutory provision which is clear and unambiguous and plainly expresses the legislative intent will not be interpreted by the courts but will be given full force and effect' Syl. Pt. 2, *State v. Epperly,* 135 W.Va. 877, 65 S.E.2d 488 (1951)." Syl. Pt. 2, *Kirwan v. Kirwan,* 212 W.Va. 520, 575 S.E.2d 130 (2002). *See also, DeVane v. Kennedy,* 205 W.Va. 519, 529, 519 S.E.2d 622, 632 (1999) ("Where the language of a statutory provision is plain, its terms should be applied as written and not construed."). West Virginia Code § 55–2–15 is clear and unambiguous. A statute of limitations may only be tolled for reason of insanity if the person is insane *at the time the cause of action accrues.*

Instead of applying the clear and unambiguous statutory language and affirming the Circuit Court of Raleigh County, the Majority has chosen to amend the statutory language to achieve the supposed "general pur-

pose" of the policy underlying the statute to provide for an interval of time *after* the alleged tortious act during which the plaintiff may become insane and invoke the tolling provisions of W. Va.Code § 55–2–15. *See,* Syl. Pts. 3 & 4, Majority Slip opinion. In an apparent recognition that its decision herein violates all established principles of statutory construction, the Majority adopts a "new" principle of statutory construction to justify its result and allow the plain meaning of a statute to be disregarded where its application "will produce a result demonstrably at odds with the intentions of the drafters." Syl. Pt. 2, Majority Slip opinion. However, to demonstrate the legislative intent necessary under this "new" principle to justify rejection of the statute's plain meaning, the Majority relies not upon language in the statute itself or its legislative history, but upon a past statement by this Court. In *Whitlow v. Board of Education of Kanawha County,* 190 W.Va. 223, 231, 438 S.E.2d 15, 23 (1993), this Court found that W. Va.Code § 55–2–15 was designed to extend the tolling period to protect the rights of infants where those who may act on the infant's behalf fail to do so. Thus, the Court relies upon itself to provide the "legislative" intent which it now uses to disregard the plain meaning of the statute as actually enacted by the Legislature.

The Majority decision herein effectively amends W. Va.Code § 55–2–15 to remedy what the Majority considers to be a policy inadequacy in legislative judgment. This intrusion into legislative prerogative yet again shows the ready inclination by this Court to exceed its proper constitutional role in the governance of this State and to thereby engage in an arrogant judicial activism which, for as long as it manifests itself, will inhibit, indeed be fatal to, the positive progress of this State.

Previously, this Court has declined to amend or overrule legislation in the face of an argument that the legislation is not meeting its desired goals, noting that "[i]t is up to the legislature and not this Court to decide whether its legislation continues to meet the purposes for which it was originally enacted. If the legislature finds that it does not, it is within its power to amend the legislation as it sees fit." *Verba v. Ghaphery,* 210 W.Va. 30, 36, 552 S.E.2d 406, 412 (2001) *(per curiam ).* When specific statutory language produces a result argued to be unforeseen by the Legislature, "the remedy lies with the Legislature, whose action produced it, and not with the courts. The question of dealing with the situation in a more satisfactory or desirable manner is a matter of policy which calls for legislative, not judicial, action." *Verizon West Virginia, Inc. v. West Virginia Bureau of Employment Programs, Workers' Compensation Division,* 214 W.Va. 95, 114, 586 S.E.2d 170, 189 (2003), quoting *Hereford v. Meek,* 132 W.Va. 373, 388, 52 S.E.2d 740, 748 (1949). Unfortunately, the Majority herein has abandoned this Court's prior "unyielding refrain[ ] from altering the tenor of a legislative enactment by appending additional elements to a statute. Where a statute is unambiguous, the incorporation of additional words, terms or provisions is not the domain of the courts." *Dailey v. Board of Review West Virginia Bureau of Employment Programs,* 214 W.Va. 419, 428, 589 S.E.2d 797, 806 (2003). Herein, the Majority has improperly acted as a superlegislature and amended clear statutory language to produce a result it desired, not what the Legislature desired. This is wrong.

Finally, I must take issue with the Majority's treatment of this Court's prior decision in *Jones v. Trustees of Bethany College,* 177 W.Va. 168, 351 S.E.2d 183 (1986). The Majority notes that *Jones* provides that the right to bring a personal injury action generally accrues at the time an injury is inflicted. Majority Slip Opinion, p. 6. However, the Majority fails to acknowledge that its holding in this matter conflicts with our long-established precedent in *Jones.* In Syllabus Point 3 of *Jones,* this Court held "[w]here a plaintiff sustains a noticeable personal injury from a traumatic event, the statute of limitations begins to run and is not tolled because there may also be a latent injury arising from the same traumatic event." Under *Jones,* the Circuit Court of Raleigh County properly dismissed Mr. Worley's claim. His alleged insanity or mental illness did not exist at the time of the injury, but instead developed as a result of treatment for the injury. As such,

it is analogous to the latent injury involved in *Jones* which does not toll the statute of limitations. Therefore, the Majority's decision herein not only conflicts with legislative prerogative, it also conflicts with our own long-established precedent.

For these reasons, I dissent from the Court's decision in this matter.